EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión Gilberto Alvarez Crespo y otros<br>        Recurridos<br><br>        v.<br><br>Hon. Pedro Pierluisi<br>Secretario de Justicia del Estado Libre Asociado de Puerto Rico<br>        Recurrente | Certiorari<br><br>2000 TSPR 21 |

Número del Caso: CC-1998-0804

Fecha: 11/02/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Lady Alfonso de Cumpiano

Oficina del Procurador General:      Lcdo. Lizette Mejías Avilés
                                     Procuradora General Auxiliar


Abogados de la Suc. Alvarez Crespo: Lcdo. Luis A. Feliciano Carreras


Materia: Sentencia Declaratoria

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Sucesión Gilberto Alvarez
Crespo y otros

    Demandantes-Recurridos

       v.                  CC-1998-804

Hon. Pedro Pierluisi,
Secretario de Justicia del
Estado Libre Asociado de P.R.

    Demandado-Recurrente


Opinión del Tribunal emitida por el Juez Asociado señor Corrada del Río



       San Juan, Puerto Rico, a 11 de febrero de 2000

       El Secretario de Justicia del Estado Libre Asociado de Puerto Rico (en adelante el peticionario) acude ante nos mediante *certiorari*. Solicita que revisemos el dictamen del Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan[1], de 17 de agosto de 1998, mediante el cual revocó la sentencia del tribunal de instancia declarando sin lugar una solicitud de sentencia declaratoria.

       La controversia en el presente caso se ciñe a determinar si las licencias por enfermedad acumuladas

---

[1]Panel compuesto por su presidenta, la Juez Alfonso de Cumpiano y los Jueces Giménez Muñoz y Miranda de Hostos; este último, disintió con opinión escrita.

por un funcionario público fenecido son o no transmisibles a sus herederos. Concluimos que son transmisibles.

I

El licenciado Gilberto Alvarez Crespo falleció el 1 de mayo de 1995 mientras fungía como fiscal auxiliar del Departamento de Justicia de Puerto Rico. El Lcdo. Alvarez Crespo laboró como servidor público durante veintiocho (28) años y, a la fecha de su muerte, tenía acumulados ochenta y dos (82) días de licencia por enfermedad, lo que conforme a su sueldo, equivalen a $17,739.35.

El peticionario pagó a los herederos del licenciado Alvarez Crespo --la Sucesión Gilberto Alvarez Crespo, compuesta por Gilberto Alvarez Candelario, Zenaida Alvarez Candelario, Dorothy Alvarez Ferrer, Gilberto Eduardo Alvarez Ferrer y la Lcda. Dorothy Ferrer del Valle (en adelante los recurridos)--, la suma acumulada por el causante en concepto de licencia por vacaciones. Sin embargo, denegó el pago de la suma acumulada en concepto de licencia por enfermedad bajo el fundamento de que ni la Ley de Personal, ni su Reglamento, contemplaban el mismo.

Inconformes, el 16 de julio de 1996, los recurridos presentaron una "Solicitud de Sentencia Declaratoria" ante el Tribunal de Primera Instancia, Sala Superior de San Juan, arguyendo tener derecho a heredar el importe de la licencia por enfermedad acumulada por el licenciado Alvarez Crespo. El 31 de marzo de 1998, notificada el 8 de abril del mismo año, el tribunal de instancia la declaró sin lugar por entender que carecía de autoridad en ley para ordenar el pago, ya que la ley no provee para que los herederos recobren dicha partida.

No conformes, el 7 de mayo de 1998, los recurridos acudieron ante el Tribunal de Circuito de Apelaciones mediante recurso de apelación. Alegaron que el tribunal de instancia erró al declarar sin lugar la demanda de sentencia declaratoria; al determinar que la doctrina de enriquecimiento injusto era

inaplicable al caso; y al resolver que la ley no establece una distinción irracional, injustificada e inequitativa.

El 17 de agosto de 1998, el tribunal apelativo dictó sentencia[2] mediante la cual revocó la sentencia apelada, declaró con lugar la demanda de sentencia declaratoria y ordenó al Secretario de Justicia pagarle a los herederos del licenciado Alvarez Crespo el importe de la licencia por enfermedad acumulada a la fecha de su fallecimiento. Por considerarlo innecesario, no entró a dilucidar los planteamientos sobre enriquecimiento injusto, trato injustificado e inequitativo y clasificación irrazonable.

De dicha sentencia, el peticionario recurre ante nos mediante *certiorari* presentado el 20 de octubre de 1998, aduciendo que:

> "[e]rró el Tribunal de Circuito de Apelaciones al interpretar que procedía el pago del balance acumulado de licencia por enfermedad a los herederos del causante, a pesar del texto claro de la ley.
> Erró el Tribunal de Circuito de Apelaciones al concluir que el pago del balance acumulado de licencia por enfermedad es un derecho transmisible a los herederos."

El peticionario solicita que revoquemos la sentencia del Tribunal de Circuito de Apelaciones y confirmemos el dictamen del tribunal de instancia declarando sin lugar la solicitud de sentencia declaratoria. Tratándose de un asunto sobre el cual aún no nos hemos expresado, el 10 de febrero de 1999, expedimos auto de *certiorari*. Con el beneficio de las comparecencias de las partes, estamos preparados para resolver.

II

El artículo 608 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 2090, define la herencia como:

---

[2] Se archivó en autos copia de su notificación a las partes el 31 de agosto de 1998.

"[l]a herencia comprende todos los bienes, derechos y obligaciones de una persona, que no se extingan por su muerte."

Por su parte, el artículo 610, 31 L.P.R.A sec. 2092, añade que:

"[l]os herederos suceden al difunto por el solo hecho de su muerte, en todos sus derechos y obligaciones."

En nuestro derecho sucesorio, al igual que en el español, el francés y el romano, la herencia comprende las relaciones jurídicas --tanto activas como pasivas--, que componían el patrimonio de la persona a la fecha de su muerte. Por el contrario, en el derecho germánico y anglosajón, la herencia es el conjunto de relaciones jurídicas activas que dimanan luego de deducir el valor de las obligaciones del causante. Vélez Torres, *Curso de Derecho Civil – Derecho de Sucesiones*, 2da ed., San Juan, 1992, t. IV, v. III, pág. 8.

En cuanto a la heredabilidad de los bienes, derechos y obligaciones de una persona fallecida, el tratadista Lacruz Berdejo[3] expresa que:

"[e]l Código no da una regla general acerca de ello, y como tampoco en todos los supuestos particulares se pronuncia acerca de la heredabilidad de determinados elementos, **habrá que decidir sobre este punto conforme a la finalidad de cada uno de ellos, su contenido social y la apreciación que en casos semejantes hace la ley.**" (Enfasis nuestro.)

Sobre el mismo asunto, nos comenta el catedrático Efraín González Tejera que:

"[E]l Código Civil no contiene una regla uniforme sobre los bienes, derechos y obligaciones que son transmisibles por herencia y los que, por ser personalísimos, concluyen con la vida del titular. Sin embargo, podemos afirmar, que la regla general es la naturaleza transmisible de todos los elementos integrantes del patrimonio de una persona fallecida.... Como señala Puig Brutau, a la regla general de transmisibilidad se le ha reconocido

---

[3] Lacruz Berdejo, *Derecho de Sucesiones*, Barcelona, Bosch, 1971, pág. 26.

algunas excepciones que 'corresponden a los derechos de carácter público, los personalísimos o ligados de manera esencial a la persona del titular y los derechos patrimoniales de carácter vitalicio.' (Nota omitida.)"[4]

En ausencia de una regla uniforme en nuestro Código Civil en torno a la transmisibilidad de los derechos y obligaciones, hacemos referencia al estudio realizado por el tratadista español José Puig Brutau[5], con respecto a las relaciones jurídicas transmisibles por herencia. Según Puig Brutau, *supra*, son transmisibles por herencia, entre otros: los derechos patrimoniales; los derechos de socio en las sociedades de capitales; la cualidad de socio en las sociedades de personas; la acción para reclamar la filiación legítima; la acción para impugnar los actos o negocios jurídicos realizados por el causante en fraude de la legítima; las diversas modalidades de la propiedad industrial; el derecho de autor; las obligaciones, salvo las de carácter personalísimo o cuando se trata de una prestación infungible; la propiedad funeraria; el derecho del causante a obtener indemnización por los daños y perjuicios que le hayan ocasionado en vida.

Por el contrario, no son transmisibles por herencia: las relaciones jurídicas de carácter público, las personalísimas y las de contenido patrimonial de duración vitalicia; los derechos reales de carácter vitalicio; algunos derechos de crédito; los derechos y deberes que integran las relaciones familiares, excepto los de contenido exclusivamente patrimonial y transmisible; los derechos que emergen de un contrato de arrendamiento; los derechos obtenidos como beneficiario en virtud de la legislación de accidentes del trabajo; el derecho al

---

[4] E. González Tejera, *Derecho Sucesorio Puertorriqueño,* San Juan, 1983, vol. I, pág. 247.

[5] Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Bosch, 1975, t. V, vol. I, págs. 44-63.

nombre; las cantidades que el asegurador deba entregar al asegurado, en cumplimiento del contrato.[6]

Por su parte, Lacruz Berdejo añade que:

"[n]o sólo se transmiten los derechos subjetivos ya nacidos, sino también los *in fieri*....'[E]l art. 661 proclama que la sucesión a título universal transmite al heredero el conjunto de las relaciones jurídicas del causante que no se extinguen, por razón de su propia naturaleza, con su muerte, y por tanto ha de operarse la transmisión en todas sus obligaciones; pero también en todos sus derechos, ya estén consolidados o en vías de consolidación; pues cuando la posibilidad de ejercitar un derecho depende del transcurso de un plazo al morir el causante, el heredero podrá ejercitarlo cuando transcurra dicho plazo, incluso sin esperar a la adjudicación... **y si esta posibilidad existe en cuanto a derechos que no pudo ejercitar en vida el causante, ha de estar legitimado con mayor razón al suceder en aquellos cuyas acciones pudo ejercitar dicho causante, aun** [sic] **cuando por las razones que fuera no las hubiera ejercitado.'"** (Enfasis suplido.)[7]

Veamos, pues, las definiciones de ambas licencias en aras de evaluar si se justifica que el legislador no haya querido otorgarle carácter de heredable a la licencia por enfermedad.

La Orden Ejecutiva de 22 de febrero de 1989, Boletín Administrativo Núm. 5288A, define la licencia de

---

[6] Nótese, que esta numeración corresponde a bienes, derechos y obligaciones que no se transmiten por herencia, independientemente de que puedan transferirse de otro modo.

[7] Lacruz Berdejo, *op. cit.*, págs. 48-49.

vacaciones como:

> "[l]a licencia de vacaciones tiene como propósito ofrecer al funcionario un período de descanso y distracción que lo releve temporalmente de las labores y responsabilidades inherentes a su cargo, sin pérdida de los emolumentos correspondientes. Con ello se pretende proteger la salud del funcionario y fomentar la unidad familiar."

Por su parte, sobre la licencia de enfermedad, dispone que:

> "[e]l objeto de la licencia por enfermedad es autorizar la ausencia del funcionario cuando éste se encuentra enfermo, impedido temporalmente para el desempeño efectivo de su cargo, o expuesto a una enfermedad contagiosa que requiera mantenerlo alejado del centro de trabajo."

Conforme al informe de la Comisión de Gobierno de la Cámara de Representantes de 4 de marzo de 1972[8] y a lo resuelto en *Caballero v. Sistema de Retiro,* 129 D.P.R. 146 (1991), el pago global de la licencia por enfermedad acumulada y no utilizada por el funcionario público a su separación del servicio fue otorgado por el legislador para (1) fomentar el buen uso de la licencia de enfermedad y (2) evitar la exclusión de los participantes del sistema de retiro que se acogen a la jubilación.

Allí mismo, establecimos que:

> "[e]l propósito de fomentar el buen uso de esta licencia se logra reconociéndole, como derecho al funcionario o empleado, que se le pagará la licencia acumulada al momento de su separación de manera que, consciente de que se le pagará y no la perderá, la utilizará con mayor circunspección. El propósito de incluir a los participantes del Sistema de Retiro se cumple igualando su derecho con el de aquel empleado no participante en dicho sistema."[9]

Cabe indicar que tanto la licencia de vacaciones como la de enfermedad son beneficios marginales creados para atraer o retener empleados públicos. Sobre este asunto, la sección 5.15 de

---

[8] En torno al P. de la C. 1584, págs. 3-4.

[9] *Caballero v. Sistema de Retiro, supra*, pág. 160.

la Ley de Personal del Servicio Público de Puerto Rico, según enmendada, *supra*, dispone que:

> "[a]demás de los beneficios marginales que se establecen para los empleados públicos mediante leyes especiales, incluyendo las disposiciones vigentes sobre días feriados, éstos tendrán derecho, entre otros, a los siguientes, según se disponga mediante reglamento:
> (1) licencia de vacaciones;
> (2) licencia por enfermedad;
> (3) ....
> (4) ...."

En *J.R.T. v. Vigilantes, Inc.*, 125 D.P.R. 581, 594 (1990) reiteramos la norma establecida en *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 D.P.R. 318, 332-333 (1988) sobre las licencias por enfermedad. La misma sostiene que:

> "[e]n su esencia, la licencia por enfermedad con sueldo es algo más que un beneficio marginal común y corriente de un empleado. Es una necesidad fundamental para el trabajador puertorriqueño que surge de una necesidad involuntaria no imputable al trabajador. Cuando esta licencia se hace acumulativa, tanto el patrono como el empleado derivan beneficios de la misma, pues con ella **se disuade el ausentismo y se le provee al trabajador la oportunidad de acumular la licencia para cuando la necesite por razones de enfermedad.**" (Enfasis en el original.)

Resumiendo, el artículo 608 del Código Civil, *supra*,

dispone que todos los bienes o derechos patrimoniales, existentes a la fecha de la muerte del causante, son transmisibles. En vista de que la licencia por enfermedad acumulada y no utilizada por el fenecido Gilberto Alvarez Crespo, es un bien patrimonial, debe transmitirse a sus herederos.

Cabe señalar que el referido artículo es una disposición de aplicación general. De modo que, para que determinado bien o derecho patrimonial sea transmisible, no es necesario que una ley así lo especifique. No obstante lo anterior, para un análisis más completo del asunto ante nos, veamos las disposiciones relativas al pago global de licencia de vacaciones y enfermedad de funcionarios y empleados públicos.

III

La Ley Núm. 125 de 10 de junio de 1967, según enmendada, 3 L.P.R.A. sec. 703 *et seq*, regula los pagos globales de licencias por vacaciones y enfermedad acumuladas y no utilizadas, en los casos en que los funcionarios y empleados públicos --excepto los de la Rama Ejecutiva nombrados por el Gobernador y los de las instrumentales y corporaciones públicas-- se desvinculan del servicio público por cualquier causa. En su artículo 2, dispone que:

> "[t]odo funcionario o empleado del Estado Libre Asociado de Puerto Rico, excepto los funcionarios de la Rama Ejecutiva nombrados por el Gobernador y los de instrumentalidades y corporaciones públicas, tendrá derecho a que se le pague y se le pagará una suma global de dinero por la licencia de vacaciones que tuviere acumulada hasta un máximo de sesenta (60) días laborables a su separación del servicio por cualquier causa, y por la licencia por enfermedad que tuviere acumulada, hasta un máximo de noventa (90) días laborables a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno, y si no lo fuere, a su separación definitiva del servicio si ha prestado, por lo menos, diez (10) años de servicios. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado estuviere devengando al momento de su separación del servicio e independientemente de los días que hubiere

disfrutado de estas licencias durante el año. Las disposiciones de esta sección son aplicables a los fiscales, procuradores y registradores de la propiedad.

Se faculta a los funcionarios nominadores para autorizar tal pago.

Al cesar la prestación de servicios, el puesto que venía desempeñando el funcionario o empleado se considerará vacante y no se considerará como tiempo servido el período posterior a la fecha en que cesó la prestación de servicios, equivalente en tiempo de licencia a dicho pago final.

Si la separación del servicio fuere motivada por la muerte del funcionario o empleado, se les pagará a sus beneficiarios la suma que hubiere correspondido a éste, por razón de la licencia de vacaciones no utilizada, conforme se dispone en esta sección."

A tenor con dicho artículo y con lo dispuesto en el artículo 2 de la Ley Núm. 141 de 30 de junio de 1966, según enmendada, 3 L.P.R.A. sec. 133b-1[10], los Fiscales del Departamento de Justicia tienen derecho a acumular y disfrutar de la licencia de vacaciones y enfermedad, de conformidad con lo provisto en el artículo 2 de la Ley Núm. 125, según enmendada, *supra*.

No obstante, con respecto a los funcionarios nombrados por el Gobernador --excepto los miembros de la Judicatura, Fiscales, Procuradores y Registradores de la Propiedad--, rige el artículo 3 de la Ley Núm. 125, según enmendada, 3 L.P.R.A. sec. 703 (b), el cual establece que:

"[e]l Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del pago de compensación final, incluyendo el pago a los beneficiarios en casos de muerte, a los funcionarios nombrados por él, con excepción de los miembros de la Judicatura, los fiscales, procuradores y registradores de la propiedad. A los efectos del pago de compensación final, que en

---

[10] El artículo 2 de la Ley Núm. 141, *supra*, dispone lo siguiente con relación a las licencias de vacaciones y enfermedad:

"[l]os fiscales y procuradores del Departamento de Justicia tendrán derecho a

...continúa

[10] ...continuación

acumular y disfrutar licencia de vacaciones y de enfermedad de conformidad con las normas aplicables a los demás empleados del Departamento."

ningún caso excederá el equivalente a seis (6) meses de sueldo, el Gobernador tomará en consideración, entre otros, factores tales como las necesidades del servicio, la naturaleza de las funciones desempeñadas y los créditos de licencia de vacaciones acumuladas en empleos anteriores en el Gobierno y no disfrutada [sic] al pasar a ocupar puestos de nombramiento por el Gobernador.

Los presidentes de las Cámaras Legislativas reglamentarán lo relativo a los funcionarios y empleados de la Asamblea Legislativa, en lo concerniente a concesión y disfrute de licencias, y en lo concerniente al pago de compensación final se ajustarán a lo dispuesto en la sec. 703a de este título."

De una simple lectura del cuarto párrafo del artículo 2 de la Ley Núm. 125, *supra,* podría colegirse que el legislador exceptuó a los herederos del pago de la suma que hubiese correspondido al funcionario o empleado por concepto de la licencia por enfermedad acumulada y no utilizada. Sin embargo, previo a evaluar la intención legislativa, veamos las normas aplicables a la interpretación de las leyes y al principio de hermenéutica legal.

El artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14, dispone que, cuando la ley es clara y libre de toda ambigüedad, la letra de la ley no debe ser menospreciada bajo el pretexto de cumplir con su espíritu.[11]

Empero, en *Banco Popular de P.R. v. Municipio de Aguadilla*, Opinión de 29 de diciembre de 1997, 144 D.P.R. ___, 97 J.T.S. 152, reiteramos lo resuelto en *Pueblo v. Ortega Santiago*, 125 D.P.R. 203, 214 (1990) sobre la discreción judicial. Allí dijimos que:

"[l]os tribunales estamos autorizados **a interpretar** las leyes cuando, entre otras, éstas no son claras o concluyentes sobre un punto en particular; cuando el objetivo, al realizarlo, es el de suplir una laguna en la misma; o cuando, con el propósito de mitigar los efectos adversos de la aplicación de una ley a una situación en

---

[11] Véase, además, *Pueblo En Interés del Menor J.M.R.,* Opinión de 12 de noviembre de 1998, 98 T.S.P.R. 151, 98 J.T.S. 146; *Municipio de San Juan v. Banco Gubernamental de Fomento*, Opinión de 21 de mayo de 1996, 140 D.P.R. ___, 96 J.T.S. 73.

particular, la justicia así lo requiere...." (Enfasis en el original.)

Por su parte, los tratadistas Bernier y Cuevas Segarra[12] añaden que:

"[a]l aplicar una ley siempre es necesario interpretarla. (Citas omitidas.) Eso es así ya sean oscuras o claras las palabras de la ley, por lo que se puede decir que es falso afirmar que sólo las leyes oscuras deben ser interpretadas...."

En *Municipio de San Juan v. Banco Gubernamental de Fomento, supra,* aclaramos que cuando el lenguaje de un estatuto no muestra claramente la intención legislativa, es necesario rechazar la interpretación literal, cuando ésta es claramente contraria a la verdadera intención o propósito legislativo.

En *Goss v. Dycrex Construction Co.*, Opinión de 9 de julio de 1996, 141 D.P.R. ___, 96 J.T.S. 103, pág. 1388, sostuvimos que:

"[a]nte la letra de una ley ambigua o incierta, tenemos la obligación de inclinarnos *'hacia aquella solución que mejor capte el impacto del estatuto en términos del bienestar general y que mejor perciba la intención legislativa al adoptar la norma enfilada a propiciar el interés público...'.* (Citas omitidas.)" (Enfasis en el original.)

En cuanto a la interpretación literal de la ley, establecimos en *Pueblo v. Zayas Rodríguez*, Opinión de 17 de febrero de 1999, 99 T.S.P.R. 15, 99 J.T.S. 16, que la letra de la ley no debe ser seguida ciegamente en casos que no caen dentro de su espíritu y fin.

Sobre el mismo asunto, Bernier y Cuevas Segarra manifiestan que:

"[a]l interpretar la ley, cualquier modalidad que se utilice debe estar fundada en las reglas que gobiernan la palabra y el pensamiento, ya que la ley no es letra muerta sino que tiene un contenido espiritual. Por ende, la interpretación no puede

---

[12] R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, San Juan, Pubs. J.T.S., 1987, pág. 259.

ser únicamente literal, ni únicamente lógica, sino ambas a la vez."[13]

Como explicó el entonces Juez Presidente señor Trías Monge, en *Pueblo v. Tribunal Superior*, 104 D.P.R. 363, 366 (1975):

> "[a]ún cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma y no la realidad que motiva el estatuto. Importa en consecuencia penetrar la superficie verbal del problema ante nos, precisar el diseño y la razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera."

Por último, en cuanto a la interpretación integral de las leyes, el artículo 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18, dispone que:

> "[l]as leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro."[14]

Bernier y Cuevas Segarra señalan que, según la regla de hermenéutica legal denominada "expressio unius est exclusio alterius", la mención específica de una persona o cosa implica la exclusión de otras personas o cosas, independientemente de si la mención es afirmativa o negativa.[15] No obstante, allí mismo aclaran que dicha regla no es de aplicación universal. A esos fines establecen que:

> "[e]sta regla de expressio unius est exclusio alterius debe aplicarse con gran cuidado porque no es de aplicación universal. No es absoluta, pues su fin primordial es determinar la intención legislativa y, cuando esta intención surge de otra manera, no debe utilizarse como medio de interpretación si su aplicación está en pugna con el pensamiento del lgislador. (Cita omitida.)
>
> Hay que cuidarse de que la enumeración que haga el texto no sea sólo un simple ejemplo. (Cita omitida.) **También hay que cuidarse de que 'la exclusión no sea una inadvertencia o accidente'. No**

---

[13] *Id.*, pág. 263.

[14] Véase, además, *Pueblo v. Zayas Colón*, Opinión de 9 de octubre de 1995, 139 D.P.R. ___, 95 J.T.S. 127.

[15] Bernier y Cuevas Segarra, *op. cit.*, pág. 345.

**debe ser utilizada cuando su aplicación, teniendo en cuenta la materia a la que ha de ser aplicada, conduce a incompatibilidad o injusticia.** (Cita omitida.) Además, esta regla constituye únicamente una ayuda para fijar el significado de la ley y debe ceder cuando surge una intención contraria de parte del legislador. (Cita omitida.) ... "[16] (Énfasis nuestro.)

A tenor de lo resuelto en *Pueblo v. Ferreira Morales*, Opinión de 10 de diciembre de 1998, 98 T.S.P.R. 165, 98 J.T.S. 150, los tribunales debemos interpretar los estatutos teniendo presente el propósito social que los inspiró, dándoles un sentido lógico a sus diversas disposiciones y supliendo posibles deficiencias en los casos en que sea necesario.

Reiteradamente, hemos resuelto que cualquier interpretación de ley que conduzca a una conclusión absurda, ha de ser rechazada. Así, pues, al ejercer nuestra función interpretativa, estamos obligados a armonizar, en la medida posible, todas las disposiciones de ley envueltas en aras de obtener un resultado más sensato, lógico y razonable. *Municipio de San Juan v. Banco Gubernamental de Fomento, supra.*

No obstante, como bien señaló el tribunal apelativo en su sentencia de 17 de agosto de 1998 en el caso de autos, "al adjudicar intención al legislador por omisión, es deber de los tribunales cerciorarnos de que esa intención está fundamentada, pues de lo contrario, podríamos desvirtuar los verdaderos propósitos de la ley, así como su fin primordial, que es hacer justicia." [17]

A esos fines, veamos el desarrollo legislativo y jurisprudencial del derecho de los empleados públicos al disfrute de las licencias por vacaciones y enfermedad acumuladas.

IV

---

[16] *Id.*, pág. 346.

[17] Apéndice, pág. 9.

El artículo 2 de la Ley Núm. 125, *supra*, según originalmente aprobado[18], dispone para el pago de una suma global por licencia de vacaciones acumuladas, a los funcionarios o empleados públicos que renuncien a sus puestos o se separen del servicio por cualquier causa, excepto muerte, destitución o abandono.[19] Nada dispone en cuanto al pago de licencias por enfermedad acumuladas.

La Asamblea Legislativa, mediante la Ley Núm. 92 de 19 de junio de 1968, enmendó el artículo 2 de la Ley Núm. 125, *supra*, a los fines de eliminar la muerte como causal de exclusión al derecho al pago de la licencia por vacaciones acumuladas.[20] Empero, añadió el cuarto párrafo para disponer que, cuando la separación del servicio se deba a la muerte del funcionario o

---

[18] El artículo 2 de la Ley Núm. 125, *supra*, según originalmente aprobado el 10 de junio de 1967, disponía que:
"[a]l renunciar su puesto, o a la separación del servicio por cualquier causa que no fuere la muerte, la destitución o el abandono del servicio, todo funcionario o empleado del Estado Libre Asociado de Puerto Rico, excepto los funcionarios de la Rama Ejecutiva nombrados por el Gobernador y los de instrumentalidades o corporaciones públicas, tendrá derecho a que se le pague, y se le pagará, una suma global de dinero por la licencia de vacaciones que tuviere acumulada a la fecha de su separación del servicio, hasta un máximo de sesenta (60) días laborables.

Se faculta a los funcionarios nominadores para autorizar tal pago.

Al cesar la prestación de servicios, el puesto que venía desempeñando el funcionario o empleado se considerará vacante y no se considerará como tiempo servido el período posterior a la fecha en que cesó la prestación de servicios, equivalente en tiempo a dicho pago final."

[19] Conforme al Informe de la Comisión de Gobierno de la Cámara de Representantes, el propósito de la medida fue permitir cubrir las vacantes sin necesidad de esperar a que el empleado agotara las vacaciones acumuladas. Informe de 25 de abril de 1966, P. de la C. 567.

[20] La Comisión de Gobierno de la Cámara de Representantes, mediante su Informe de 21 de mayo de 1968, P. del S. 710, expresó en torno a dicha medida que "su muerte no debe constituir una prescripción de ese derecho."

empleado, los beneficiarios de éste tendrán derecho a reclamar el pago de la licencia por vacaciones no utilizada. Así dispone que:

> "[s]i la separación del servicio fuere motivada por la muerte del funcionario o empleado, se les pagará a sus beneficiarios la suma que hubiere correspondido a éste, por razón de la licencia de vacaciones no utilizada, conforme se dispone en este artículo."[21]

Posteriormente, la Ley Núm. 37 de 25 de mayo de 1972 enmendó el artículo 2 de la Ley Núm. 125, según enmendada, *supra*, para eliminar la destitución y el abandono como causales de exclusión al derecho al pago de la licencia por vacaciones acumuladas. En su lugar, dispone para el pago de dicha licencia cuando la separación del servicio sea "por cualquier causa".[22] Además, por primera vez, incorporó el derecho al pago de licencia por enfermedad. Así reza el primer párrafo del referido artículo:

> "[t]odo funcionario o empleado del Estado Libre Asociado de Puerto Rico, excepto los funcionarios de la Rama Ejecutiva nombrados por el Gobernador y los de instrumentalidades y corporaciones públicas, tendrá derecho a que se le pague, y se le pagará, una suma global de dinero por la licencia de vacaciones que tuviere acumulada hasta un máximo de sesenta (60) días laborables, a su separación del servicio por cualquier causa; y por la licencia por enfermedad que tuviere acumulada, hasta un máximo de noventa (90) días laborables, a su separación del servicio para acogerse a una pensión por retiro por edad o por incapacidad. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado estuviere devengando al momento de su separación del servicio e independientemente de los días que hubiere disfrutado de estas licencias durante el año."

Dicha enmienda, contrario a la Ley Núm. 125, según inicialmente aprobada, nada dispone en cuanto a la licencia por enfermedad en aquellos casos en que la separación del servicio

---

[21] Desde luego, nada dispuso en cuanto a la transmisibilidad de la licencia por enfermedad acumulada puesto que, para esa fecha, tampoco a los funcionarios o empleados públicos se les reconocía el derecho a tal licencia.

[22] Nótese que, aún cuando la legislatura utilizó un lenguaje específico, su intención no fue excluir a ningún empleado por razón de la índole de su jubilación. Así lo aclaró en el Memorial Explicativo de 12 de noviembre de 1973.

fuere motivada por la muerte del funcionario o empleado.[23] Tampoco contiene lenguaje excluyente.

El 23 de julio de 1974, se aprobó la Ley Núm. 198 para enmendar el artículo 2 de la Ley Núm. 125, según enmendada, *supra*, a los fines de aclarar cuándo procederá el pago de la licencia por enfermedad acumulada. Al respecto, se decretó que "y por la licencia por enfermedad que tuviere acumulada, hasta un máximo de noventa (90) días laborables, a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno y si no lo fuere, a su separación definitiva del servicio si ha prestado, por lo menos, diez años de servicios...."

Por último, el primer párrafo del artículo 2 de la Ley Núm. 125, según enmendada, *supra*, fue modificado por la Ley Núm. 40 de 13 de diciembre de 1990, con motivo de reconocer por ley el derecho de los Fiscales, Procuradores y Registradores de la Propiedad del Departamento de Justicia a acumular las licencias de vacaciones y enfermedad.[24]

Cabe señalar que, previo a 1990, las licencias de los fiscales se liquidaban mediante compensación final, al amparo del artículo 3 de la Ley Núm. 125, según originalmente aprobada en 10 de junio de 1967. Posteriormente, dicho precepto fue enmendado mediante la Ley Núm. 55 de 19 de junio de 1969, a los fines de disponer para el pago a los beneficiarios en caso de muerte. Sobre el particular, la primera oración del primer párrafo de la referida ley establece que "[e]l Gobernador reglamentará todo lo relativo a la concesión y disfrute de licencias y la cuantía del

---

[23] El cuarto párrafo del artículo 2, según aprobado mediante la Ley Núm. 92, *supra,* no sufrió enmiendas.

[24] Así, pues, añadió al final del primer párrafo del artículo 2 que "[l]as disposiciones de este artículo serán aplicables a los Fiscales, Procuradores y Registradores de la Propiedad del Departamento de Justicia".

pago de compensación final, incluyendo el pago a los beneficiarios en casos de muerte, a los funcionarios nombrados por él, con excepción de los miembros de la Judicatura."

No fue hasta 1990[25], que el legislador excluyó a los fiscales de la aplicación del artículo 3 de la Ley Núm. 125, según enmendada, *supra,* y reconoció el derecho de éstos a acumular las licencias de vacaciones y enfermedad Es decir, hasta entonces, los beneficiarios de un fiscal fenecido tenían derecho al pago de la compensación final correspondiente.

Por otra parte, el artículo 12.020 de la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991[26], contiene un lenguaje similar al del artículo 2 de la Ley Núm. 125, según enmendada, *supra*. El referido artículo 12.020, dispone lo siguiente en cuanto al pago global de licencias acumuladas a funcionarios o empleados municipales:

> "[a]l renunciar a su puesto, o a la separación definitiva del servicio público por cualquier causa, todo funcionario o empleado municipal tendrá derecho a percibir, y se le pagará en un término no mayor de treinta (30) días, una suma global de dinero por la licencia de vacaciones que tuviere acumulada a la fecha de su separación del servicio, hasta un máximo de sesenta (60) días laborables.
>
> De igual forma, a todo funcionario y empleado municipal se le pagará la licencia por enfermedad que tenga acumulada, hasta un máximo de noventa (90) días laborables, a su separación del servicio para acogerse a la jubilación si es participante de algún sistema de retiro auspiciado por el Gobierno del Estado Libre Asociado de Puerto Rico. Si no lo fuere a su separación definitiva del servicio, debe haber prestado, por lo menos, diez (10) años de servicios. Esta suma global por concepto de ambas licencias se pagará a razón del sueldo que el funcionario o empleado esté devengando al momento de su separación del servicio, independientemente de los días que hubiere disfrutado de estas licencias durante el año.

---

[25] Mediante la Ley Núm. 40, *supra*.

[26] 21 L.P.R.A. sec. 4570.

Se faculta a la autoridad nominadora para autorizar tal pago.

**Si la separación fuere motivada por la muerte del funcionario o empleado, se le pagará a sus herederos la suma que hubiere correspondido a él por razón de las licencias de vacaciones y de enfermedad no utilizadas, según fuere el caso,** conforme a lo dispuesto en esta sección...." (Enfasis nuestro.)

En cuanto a la afinidad entre ambas disposiciones, el Secretario de Justicia[27] señala que:

"[e]l referido artículo [12.020] contiene disposiciones muy similares al Artículo 2 de la Ley Núm. 125 de 10 de junio de 1967, según enmendada, 3 L.P.R.A. sec. 703a, y por tal razón le son aplicables las mismas interpretaciones legales de que ha sido objeto el mencionado Artículo 2."

La similitud entre dichos artículos, así como el criterio del Secretario de Justicia con respecto a que las interpretaciones de uno son aplicables al otro, nos lleva a concluir que el legislador no quiso distinguir entre los derechos de los herederos de un funcionario público y los de un empleado municipal. Aún más, nótese que el artículo 12.020 de la Ley Núm. 81, *supra*, fue aprobado con posterioridad al artículo 2 de la Ley Núm. 125, según enmendada, *supra*. Podríamos, entonces, concluir que el legislador le otorgó carácter de heredable a las licencias por enfermedad acumuladas en ambos casos. ¿Por qué habría de querer el legislador penalizar a los herederos de un funcionario público del gobierno central que se dedicó al servicio público hasta su muerte?

Cabe señalar que, la ley también le confiere el derecho al pago de licencia por enfermedad a los herederos de los empleados de la rama judicial, al amparo de la sección 19.9 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XIII.[28]

---

[27] LXIV Op. Srio. Just. Núm. 24 de 1993.

Sería un contrasentido interpretar que, en caso de muerte, los herederos de un funcionario municipal y de un empleado de la rama judicial tienen derecho a reclamar la licencia de enfermedad acumulada por su causante, no así, los herederos de un funcionario público del gobierno central.

En *Dorante v. Wrangler of P.R.,* Opinión de 27 de abril de 1998, 145 D.P.R. ___, 98 J.T.S. 49, reiteramos que, además del texto de la ley, el historial legislativo del estatuto puede ser consultado para descubrir la intención del legislador.

En la Exposición de Motivos de la Ley Núm. 40, *supra*, la Asamblea Legislativa --haciendo referencia a la Orden Ejecutiva de 1 de diciembre de 1967, Boletín Administrativo Núm. 1312, según enmendada--, aclaró que, aún cuando los Procuradores Especiales de la Sala de Relaciones de Familia, los Fiscales y los Registradores de la Propiedad son funcionarios nombrados por el Gobernador, éstos, por excepción, tienen derecho a acumular y disfrutar las licencias de vacaciones y enfermedad, por cuanto dichos cargos están adscritos al Departamento de Justicia.

Con respecto a la acumulación y disfrute de tales licencias estableció lo siguiente:

> "[f]undado precisamente en la uniformidad y consistencia que se pretendió insuflar a la norma en cuestión, a la hora de la desvinculación o cese en el servicio de dichos funcionarios tampoco se ha hecho distinción entre ellos y el resto de los empleados del Departamento de Justicia, considerándolos indistintamente bajo un mismo régimen estatutario. En este sentido, el Departamento de Justicia tradicionalmente entendía que este grupo de funcionarios eran empleados

---

[28] Dicha sección dispone lo siguiente en cuanto al pago global de licencias de vacaciones y enfermedad al separarse del servicio un empleado de la rama judicial:

> "[t]odos los empleados, o sus sucesores en derecho, separados del servicio por cualquier causa, incluyendo destitución, tendrán derecho a un pago global por la licencia de vacaciones y licencia por enfermedad acumuladas que tuvieran a su crédito a la fecha de su separación del servicio, hasta un máximo de noventa (90) días laborables por cada tipo de licencia...."

regulares para los fines de liquidación de sus licencias, extendiéndoseles un pago global de hasta 60 días de vacaciones y 90 días por enfermedad dependiendo de las circunstancias particulares del caso."

El memorial explicativo de 12 de noviembre de 1973 sobre la enmienda al artículo 2 de la Ley Núm. 125, *supra*, mediante la Ley Núm. 37 de 25 de mayo de 1972, aclaró que la misma:

"[r]espondió a una preocupación de la Oficina de Personal relacionada con el problema del uso indebido de esta licencia. Debido a que la licencia por enfermedad es acumulable hasta un máximo de noventa días, la tendencia de los empleados es a utilizarla para no perderla aunque no sea por razones válidas de enfermedad. Como incentivo para inducir a los empleados a hacer un mejor uso de esta licencia, se propuso el pago de una suma global por la licencia que éstos tuvieran acumulada a la fecha de su separación del servicio para acogerse a la jubilación."

El informe de la Comisión de Gobierno de la Cámara de Representante de 4 de marzo de 1972 añadió al respecto que:

"[e]l propósito de esta propuesta es proveer un incentivo para inducir a los empleados públicos a un mejor uso de la licencia por enfermedad para evitar la práctica señalada y, por otra parte, añadiría un beneficio marginal adicional lo cual es un incentivo para atraer y retener personal idóneo al servicio de carrera pública."[29]

Asimismo, el Senado de Puerto Rico, en su informe de 19 de junio de 1974, recomendó la aprobación del Proyecto del Senado 719 de 12 de marzo de 1974[30], cuyo propósito era liberalizar lo dispuesto en el artículo 2 de la Ley Núm. 125, según enmendada, *supra*, como una medida de justicia para los empleados públicos.

Aún más, tan reciente como en 1996, el legislador reafirmó su interés por premiar al empleado público que utiliza las licencias de vacaciones y enfermedad de forma prudente y

---

[29] Véase, además, *Caballero v. Sistemas de Retiro, supra*, págs. 158-159.

[30] Tras su aprobación, pasó a ser la Ley Núm. 198 de 23 de julio de 1974.

razonable. Sobre dicho asunto, expresó en la Exposición de Motivos de la Ley Núm. 156 de 20 de agosto de 1996[31] que:

> "[e]l Gobierno de Puerto Rico tiene el interés de identificar los medios necesarios para ofrecer al empleado público aquellos beneficios que promuevan el adecuado uso de las licencias por enfermedad y vacaciones, retener el personal que ha colaborado en el desarrollo de los logros obtenidos a través de los años y atraer aquellos profesionales que tienen el interés de aportar esfuerzos y trabajo a la dura labor de gobierno."

Reconocer que un funcionario público que no ha utilizado al máximo su licencia por enfermedad en vida puede transmitir a sus herederos el derecho a que se les compense por ese concepto, redunda en evitar el uso irrazonable de la licencia por el funcionario.

Examinados los principios normativos expuestos, veamos su aplicación al caso de marras.

V

El licenciado Gilberto Alvarez Crespo fungió como fiscal auxiliar durante veintiocho (28) años. Su separación del servicio público se debió a su fallecimiento el 1 de mayo de 1995. Es decir, a su separación definitiva del servicio público --por causa de muerte--, había prestado más de diez (10) años de servicio. Por tanto, cumplió con los requisitos para tener derecho al pago global de licencia por enfermedad establecidos en el artículo 2 de la Ley Núm. 125, según enmendada, *supra*, a saber, (1) que se separe definitivamente del servicio; y (2) que el empleado público haya prestado por lo menos diez (10) años de servicio.[32] No obstante, el Lcdo. Alvarez Crespo se vio

---

[31] Para enmendar la sección 5.15 de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la "Ley de Personal del Servicio Público de Puerto Rico", 3 L.P.R.A. sec. 1355.

[32] Es de notar que, aunque el Lcdo. Alvarez Crespo era participante del sistema de retiro gubernamental, no le aplicaba el primer supuesto del antes citado artículo 2 de la Ley Núm. 125, por cuanto su separación del servicio no fue para acogerse a la jubilación.

imposibilitado de disfrutar de su derecho debido a su fallecimiento.

Indudablemente, a tenor con el referido articulado, el licenciado Alvarez Crespo hubiese sido elegible al pago de la suma global acumulada por concepto de licencia por enfermedad, de su separación definitiva del servicio público haber sido motivada por otra causal que no fuera su muerte. En cuyo caso, tendría derecho al pago de $17,739.35, equivalentes a los ochenta y dos (82) días que tenía acumulados en concepto de licencia por enfermedad.

Sin embargo, las diversas enmiendas que ha sufrido el artículo 2 de la Ley Núm. 125, *supra*, denotan el interés de la legislatura de corregir el lenguaje de dicha disposición. Sobre el particular, resolvimos en *Caballero v. Sistemas de Retiro, supra*, pág. 157, que:

> "[L]a evolución e historial legislativo de este artículo [2] de la ley [Núm. 125] y sus enmiendas demuestran su carácter reparador y su propósito de proteger los derechos adquiridos por los servidores públicos, así como de estimular a aquel servidor público que por servirle a su país se ha visto imposibilitado del disfrute de sus vacaciones regulares y de su licencia por enfermedad acumulada. Por ello debemos interpretarlo **liberalmente**, a favor del empleado, puesto que dicha ley concede una serie de derechos en pro del reclutamiento y retención de tales servidores públicos con el fin del fortalecimiento mismo del servicio público." (Enfasis nuestro.)

Allí mismo advertimos que, siendo la Ley Núm 125, *supra*, una de carácter reparador, para que un empleado quede excluido de los beneficios de dicho estatuto, la exclusión tiene que ser expresa. A modo de ejemplo, señalamos a los funcionarios de instrumentalidades y corporaciones públicas y a los nombrados por el Gobernador.[33] Entonces, por analogía, podríamos concluir que, al no prohibir expresamente la heredabilidad de la licencia de

---

[33] *Caballero v. Sistemas de Retiro, supra*, págs. 164-65.

enfermedad acumulada por un funcionario público fenecido, el legislador no quiso excluirlo. Más bien se debió a una omisión del legislador.

Por su parte, Bernier y Cuevas Segarra manifiestan que:

"[t]oda acción legislativa persigue un propósito. Trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno."[34]

A modo de ejemplo, en cuanto a la necesidad de corregir el lenguaje de esta disposición, el Secretario de Justicia sostuvo que el artículo 2 de la Ley Núm. 125, *supra*, adolece de una laguna con respecto al lapso de tiempo que debe transcurrir para poder determinar si hubo desvinculación del servicio público. Sobre el particular, indicó que:

"[e]s mi criterio, por tanto, que imponer determinado período de tiempo como norma general, aplicable a todos los casos, sería una acción arbitraria e inefectiva, por carecer de fundamento legal alguno. Se debe recurrir a la acción legislativa, a fin de que se enmiende el referido Artículo 2 de la Ley Núm. 125 de 1967 para aclarar esta aparente omisión en dicho precepto, según se recomendó en la Op. Sec. Just. Núm. 16 [de 1 de junio] de 1982, a la pág. 99." [35]

Estamos de acuerdo con la determinación del tribunal apelativo sosteniendo que:

"[d]el historial legislativo no puede colegirse intención legislativa alguna de excluir el pago de licencia acumulada por enfermedad en caso de muerte al interpretar el último párrafo del artículo 2 de la Ley Núm. 125. Por otro lado, sí puede interpretarse que la incorporación específica de la disposición sobre el pago de licencia acumulada por vacaciones en el

artículo 2, *supra*, a los herederos en caso de muerte, según lo dispuso la Ley Núm. 92 de 1968, obedeció al hecho de que al aprobarse originalmente la Ley Núm. 125 se excluyó el pago por el concepto de licencia por vacaciones en casos de muerte. Conforme el historial legislativo antes referido, el legislador tuvo como fin corregir esa situación y para ello enfatizó, al eliminar la restricción,

---

[34] Bernier y Cuevas Segarra, *op. cit.* págs. 245-246.

[35] LXIII Op. Srio. Just. Núm. 29 de 1992.

que el pago de esa licencia se efectuaría a los herederos. Al no haber existido esa limitación por ley en el caso del pago de licencia por enfermedad, no había motivo para expresamente reconocer el derecho o corregir situación alguna."[36]

Por los fundamentos expuestos, entendemos que no existe impedimento legal o interpretativo que nos restrinja de concederle a los herederos del licenciado Gilberto Alvarez Crespo el derecho al pago de $17,739.35, equivalentes a la licencia por enfermedad acumulada por éste a la fecha de su fallecimiento. Lo contrario, quebrantaría el fin primordial legislativo de que los empleados públicos hagan buen uso de la licencia por enfermedad.

Concluimos, además, que el pago global de la licencia por enfermedad acumulada no es personalísimo. Por el contrario, es un derecho patrimonial transferible a los herederos de un funcionario público fenecido al amparo del artículo 608 del Código Civil, *supra*.

Expedido previamente el auto de certiorari, confirmamos el dictamen del Tribunal de Circuito de Apelaciones.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[36] Apéndice, pág. 12-13.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sucesión Gilberto Alvarez
Crespo y otros

    Demandantes-Recurridos
       v.                  CC-1998-804

Hon. Pedro Pierluisi,
Secretario de Justicia del
Estado Libre Asociado de P.R.

    Demandado-Recurrente

SENTENCIA

San Juan, Puerto Rico, a 11 de febrero de 2000.

Por los fundamentos expuestos en la Opinión precedente, la cual se hace formar parte de esta sentencia, se confirma el dictamen del Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, de 17 de agosto de 1998, mediante el cual revocó la sentencia del tribunal de instancia.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.

                    Isabel Llompart Zeno
                Secretaria del Tribunal Supremo