Opinión de conformidad emitida por el
Juez Asociado Señor Rivera Pérez.
Alega el peticionario que erró el Tribunal de Apelaciones al denegar la expedición de la Petición de certiorari, por entender que su intervención desvirtuaría la naturaleza sumaria del procedimiento de reclamación laboral que pen-día ante el Foro de Primera Instancia. Tiene razón. Veamos.
La Ley de Procedimientos Legales Especiales, Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 L.P.R.A. sees. 3118-3132 (Ley Núm. 2), creó un mecanismo procesal con el propósito de lograr una consideración rápida y la adjudicación de querellas presentadas por empleados u *728 obreros contra sus patronos.(1) La Ley Núm. 2 responde a una clara e inequívoca política pública establecida por el Estado que busca abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero.(2) Reiterada-mente hemos enfatizado que la esencia y médula del trá-mite fijado por dicho estatuto constituye precisamente el procesamiento sumario y expedito.(3) En otras palabras, la naturaleza sumaria del procedimiento establecido en esta ley constituye su característica esencial.(4)
El álcance de la Ley Núm. 2 se extiende a varios esta-tutos laborales. Entre estos se encuentran los siguientes: (1) las querellas por reclamaciones de salarios y beneficios; (2) las instadas por despido injustificado según la Ley Núm. 80 de 30 de mayo de 1976 (29 L.RR.A. 185(a) et seq.); (3) las reclamaciones según el Art. 5A de la Ley de Com-pensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril 1935, según enmendada, 11 L.P.R.A. sec. 1 et seq.; (4) las reclamaciones ál amparo del Art. 1 de la Ley Anti-discrimen, Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. see. 146, (5) y las reclamaciones al amparo de la Ley Núm. 115 de 20 de diciembre de 1991, conocida como Ley de Represalias, 29 L.P.R.A. sec. 194-194b.
La Ley Núm. 2 provee un procedimiento para alcanzar los propósitos legislativos de proteger el empleo, desalen-tar el despido sin justa causa y proveer al obrero así des-pedido los recursos económicos para su subsistencia mien-tras consigue un nuevo empleo.(5) Siendo de carácter reparador el procedimiento sumario, tiene que interpre-tarse de forma liberal a favor del empleado.(6) Este, proce-dimiento fue instituido en aras de remediar la desigualdad *729 económica existente entre las partes al instarse una recla-mación de este tipo.(7)
De acuerdo con los propósitos expuestos, el trámite pro-cesal dispuesto en la Ley Núm. 2 por la Asamblea Legisla-tiva ciertamente es más oneroso para el patrono.(8) Por ejemplo, los términos para contestar la querella presen-tada por el empleado son más cortos, pues existen criterios estrictos para conceder una prórroga para contestar la que-rella y limitaciones adicionales sobre el uso del descubri-miento de prueba.(9) No obstante, la Ley Núm. 2 concede al patrono las oportunidades básicas para defenderse, cum-pliendo con las garantías del debido proceso de ley.(10)
No obstante el carácter sumario de la Ley Núm. 2, no fue la intención del legislador imponer un trámite procesal inflexible e injusto para el patrono querellado.(11) La Ley Núm. 2 no puede ser interpretada ni aplicada en el vacío y, aun ante los casos que parezcan ser iguales, en ocasiones, sus hechos requerirán tratamientos distintos en aras de conseguir un resultado justo. (12) Esto se traduce a que apli-caremos en ocasiones una disposición en forma enérgica y en otras seremos más flexibles. (13)
Hemos resuelto que el Foro de Primera Instancia, ante un planteamiento oportuno al respecto, tiene la discreción para que, luego de hacer un análisis cuidadoso de la natu-raleza de la reclamación y de los intereses involucrados, determine que la querella presentada por el obrero sea tra-mitada por la vía ordinaria.(14) Para que el Tribunal de Primera Instancia pueda hacer una determinación en *730 torno a cuál procedimiento es el adecuado, debe hacer un justo balance entre los intereses del patrono y los del obrero querellante, a la luz de las circunstancias específi-cas de las reclamaciones en la querella. (15)
El que una parte meramente alegue que la reclamación instada en su contra es compleja no justifica la conversión del proceso en ordinario. Por lo tanto, las partes deben ex-poner todas las circunstancias pertinentes del caso para que sean examinadas por el tribunal y de esta manera éste pueda estar en la posición de hacer una determinación so-bre si encausa el procedimiento por la vía sumaria u ordinaria. Incluso, de entenderlo necesario, el Foro de Pri-mera Instancia podría celebrar una vista para dilucidar esta controversia. (16)
Ante un planteamiento oportuno al respecto, el Foro de Primera Instancia, luego de hacer un análisis ponderado de los intereses de las partes en el caso y cuando la justicia lo requiera, podrá ordenar que se tramite la reclamación por la vía ordinaria. En dichos casos limitamos nuestra función revisora a determinar si el Tribunal de Instancia ha abusado de su discreción al actuar así.(17)
La revisión de resoluciones interlocutorias es contraria al carácter sumario del procedimiento según Ley Núm. 2 y, por tal razón, la facultad de revisar dichas resoluciones de los tribunales apelativos es limitada.(18) Sobre el particular, en Dávila, Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483, 496-497 (1999), sostuvimos lo siguiente:
Es por ello que, aunque la legislación otorga a los tribunales apelativos —antes al Tribunal Supremo y en la actualidad al Tribunal de Circuito de Apelaciones— la facultad para revisar las resoluciones interlocutorias dictadas por los tribunales de *731 instancia, entendemos que la naturaleza del procedimiento de la Ley Núm. 2 reclama que dicha facultad quede limitada en el caso de las resoluciones interlocutorias dictadas dentro de un procedimiento llevado al amparo de dicha ley. Con el objetivo de dar estricto cumplimiento al propósito legislativo de instau-rar un procedimiento rápido y sumario de reclamación de sa-larios, resolvemos que nuestra facultad revisora de las resolu-ciones interlocutorias que se dicten en el seno de dicho proceso queda autolimitada de forma que nos abstendremos de revisarlas. De igual modo, el Tribunal de Circuito de Apelacio-nes deberá abstenerse de revisar dichas resoluciones.
En consecuencia, la parte que pretenda impugnar tales re-soluciones interlocutorias deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del ale-gado error cometido. De este modo se da cumplimiento a la médula del procedimiento analizado y, por otro lado, no queda totalmente desvirtuado el principio de economía procesal ya que, si tenemos en cuenta la rapidez con que sobrevienen los escasos eventos procesales previstos por la Ley Núm. 2 vere-mos que la parte podrá revisar en tiempo cercano los errores cometidos.
Ahora bien, la norma que hoy establecemos no es absoluta. En aquellos casos en que la resolución interlocutoria que se pretenda impugnar haya sido dictada por el tribunal de ins-tancia de forma ultra vires, sin jurisdicción, este Tribunal o el Tribunal de Circuito de Apelaciones —según corresponda— sí mantendrá y ejercerá su facultad para revisarla vía certiorari.
Así, pues, concluimos que, con el objetivo de salvaguardar la intención legislativa, autolimitamos nuestra facultad revisora, y la del Tribunal de Circuito de Apelaciones, en aquellos de resoluciones interlocutorias dictadas al amparo de la citada Ley Núm. 2 con excepción de aquellos supuestos en que la misma se haya dictado sin jurisdicción por el tribunal de ins-tancia y en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo; esto es, en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso, o su pronta disposición, en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una “grave injusticia” (miscariage of justice). (Citas, én-fasis y escolios omitidos, y énfasis suplido.)
En su sentencia, el Tribunal de Apelaciones sostuvo que este caso no ameritaba su intervención para revisar una *732 orden interlocutoria. Sostuvo, además, que tampoco reque-ría una intervención para evitar una injusticia grave. Se-gún lo anterior, el foro intermedio apelativo denegó el re-curso de “certiorari” presentado por el peticionario y devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.
Estamos de acuerdo con el peticionario en que la recla-mación laboral de los querellantes perdió de facto su carác-ter sumario para convertirse en un proceso ordinario. La reclamación de los querellantes fue presentada original-mente en el Tribunal de Primera Instancia el 15 de junio 1995, en exceso de doce años a la fecha de hoy. Desde en-tonces se han suscitado innumerables trámites procesales, tales como —pero no limitado a— la presentación de dos informes de conferencias de abogados, mociones de deses-timación de parte y parte, solicitudes de demandas contra coparte y peticiones de certiorari a foros apelativos, entre otros. Aunque el Foro de Primera Instancia nunca mani-festó explícitamente su intención de encausar la querella por la vía ordinária, entendemos que, en efecto, perdió su carácter sumario debido al tiempo transcurrido desde su presentación original.
En Dávila, Rivera v. Antilles Shipping, Inc., supra, pág. 500, sostuvimos que una querella al amparo de la Ley Núm. 2, presentada cinco años antes, había “perdido su esencia sumaria debido, precisamente, al tiempo qué ha tomado la resolución final del asunto planteado en este recurso”. Tomando en cuenta lo anterior, no dudamos de que un caso como el de marras, que se inició hace doce años, ha perdido de facto su esencia sumaria.
Creemos que el foro intermedio apelativo erró al dene-gar la expedición de la Petición de Certiorari, por entender que su intervención desvirtuaría la naturaleza sumaria del procedimiento de reclamación laboral que pendía ante el Foro de Primera Instancia. Resulta manifiesto que debido al tiempo que ha tomado resolver esta reclamación, ésta ha *733 perdido su carácter sumario. Se tiene que tratar como una acción ordinaria, sin aplicarle las disposiciones de la Ley Núm. 2.
Alega, además, el peticionario que el Tribunal de Apela-ciones erró al resolver que la reclamación laboral de los querellantes fue heredada por el peticionario. El error se-ñalado fue cometido. Veamos.
La sucesión es la transmisión de los derechos y las obli-gaciones del difunto a sus herederos.(19) La sucesión tam-bién significa las propiedades, los derechos y las cargas que una persona deja después de su muerte, ora la propie-dad exceda a las cargas, las cargas excedan a la propiedad o bien si la persona ha dejado solamente cargas y ninguna propiedad.(20)
La herencia comprende todos los bienes, los derechos y las obligaciones de una persona que no se extingan por su muerte.(21) Los herederos suceden al difunto por el hecho solo de su muérte, en todos sus derechos y obligaciones.(22) El derecho de un heredero a la herencia nace al ocurrir el fallecimiento de su causante, pudiendo él desde ese momento enajenar sus derechos y accionés en ella.(23)
En nuestro derecho sucesorio, al igual que en el español, el francés y el romano, la herencia comprende las relacio-nes jurídicas activas y pasivas que componían el patrimo-nio de la persona a la fecha de su muerte.(24) Son transmi-sibles por herencia, entre otros: los derechos patri-moniales; los derechos de socio en las sociedades de capi-tales; la cualidad de socio en las sociedades de personas; la acción para reclamar la filiación legítima; la acción para impugnar los actos o negocios jurídicos por el causante en *734 fraude de la legítima; las diversas modalidades de la pro-piedad industrial; el derecho de autor; las obligaciones, salvo las de carácter personalísimo o cuando se trata de una prestación infungible; la propiedad funeraria; el dere-cho del causante a obtener indemnización por los daños y perjuicios que le hayan ocasionado en vida.(25)
No son transmisibles por herencia: las relaciones jurídi-cas de carácter público, las personalísimas y las de conte-nido patrimonial de duración vitalicia; los derechos reales de carácter vitalicio; algunos derechos de crédito; los dere-chos y deberes que integran las relaciones familiares, ex-cepto los de contenido exclusivamente patrimonial y trans-misible; los derechos que emergen de un contrato de arrendamiento; los derechos obtenidos como beneficiario en virtud de la legislación de accidentes del trabajo; el de-recho al nombre; las cantidades que el asegurador deba entregar al asegurado, en cumplimiento del contrato.(26)
Sobre este particular, el tratadista Efraín González Te-jera, en su libro Derecho de Sucesiones: La sucesión intestada, San Juan, Ed. U.P.R., 2001, T. I, págs. 193-195, ex-presa lo siguiente:
La consecuencia principal de la aceptación pura y simple de la herencia es la responsabilidad del heredero frente a los acreedores del causante, no sólo con el valor de los bienes re-cibidos, sino también con los suyos propios .... Esta seria y mucha veces peligrosa responsabilidad es solidaria frente al acreedor, esto es, el acreedor insoluto puede cobrar la totali-dad de lo que el causante le debía a cualquiera de los herede-ros que aceptaron la herencia en forma pura y simple, aunque nada hubiera recibido del caudal. Sin embargo, el heredero demandado puede traer al pleito los demás coherederos, reme-dio que, en muchos casos resulta ineficaz. Si el demandado no trae el litigio a sus coherederos como terceros demandados, tiene todavía la acción de repetición contra los demás cohere-deros, si pagó la sentencia. Pero en estos casos se produce la *735 mancomunidad, es decir, que la responsabilidad por el pago hecho al acreedor se prorratea entre coherederos puros y, si uno de ellos resultara insolvente, los demás asumirían la por-ción a que éste le correspondiera pagar, y retendrían todos el derecho a reclamarle, en su día, lo que no llegó a pagar, por aquello de que del cumplimiento de las obligaciones responde el deudor con sus bienes presentes y futuros.
... En nuestro sistema de Derecho la muerte del deudor no produce, automáticamente, el vencimiento de sus obligaciones ni requiere que se presente al albacea o administrador judicial como condición para cobrarlos. Por ello, en nuestro medio puede darse la situación en la que, concluida la partición y hasta varios años después, se presenten acreedores a cobrar sus acreencias. (Escolios omitidos.)
El Art. 954 del Código Civil de Puerto Rico,(27) dispone lo siguiente:
Entiéndese aceptada la herencia:
(1) Cuando el heredero vende, dona o cede su derecho a un extraño, a todos sus coherederos o a alguno de ellos.
(2) Cuando el heredero la renuncia, aunque sea gratuita-mente, a beneficio de uno o más de sus coherederos.
(3) Cuando la renuncia por precio a favor de todos sus co-herederos indistintamente; pero si esta renuncia fuere gra-tuita y los coherederos a cuyo favor se haga son aquéllos a quienes debe acrecer la porción renunciada, no se entenderá aceptada la herencia. (Énfasis suplido.)
La enajenación de la participación del heredero en una herencia implica necesariamente que la aceptó.(28) Sobre este asunto, nos comenta el profesor Efraín González Te-jera lo siguiente:
No puede existir acto de aceptación de herencia más claro que enajenar a título oneroso lo que al vendedor pueda corres-ponder en la herencia de su causante. El artículo 954 dispone en parte que se entiende aceptada la herencia cuando el here-dero vende, dona o cede su derecho a un extraño, a todos sus coherederos o alguno de ellos. Ceder por precio o donar el de- *736 recho hereditario son actos que no pueden realizare sino con la condición de heredero. Enajenar toda la herencia del causante o parte de ella equivale a una aceptación tácita del derecho a heredar.(29)
El profesor Efraín González Tejera define legado como una atribución que hace el testador en favor de una o va-rias personas, determinadas o determinables, por la cual ordena a uno o a más de sus herederos, al albacea o, in-cluso, a otro legatario, que a su debido tiempo proceda a ceder o a hacer al legatario un derecho, una cosa o un ser-vicio, o entregar una fracción del activo neto hereditario.(30) El legado constituye una transmisión gratuita dé elemen-tos del activo del patrimonio del causante, del heredero o de otro legatario a favor del beneficiario.(31) Los tratadistas José Luis Lacruz Berdejo y Francisco Sancho Rebullida de-finen legado como un “regalo póstumo”.(32)
Se define legatario como aquel a quien el testador le dispensa algún beneficio, susceptiblé o no de valoración patrimonial, teniendo presente que el testador puede siempre someter dicha atribución a las incidencias de la condición, del término o de la carga o el modo.(33)
Cuando el legado es de una cosa específica y determi-náda, el legatario adquiere su propiedad desdé que el tes-tador muere, y hace suyo los frutos o las rentas, pero no las rentas devengadas y no satisfechas antes de la muerte.(34) Sin embargo, el legatario no puede ocupar por su propia autoridad la cosa legada, sino que debe pedir su entrega y posesión al heredero o albacea cuando éste se halle autori-zado para darla. (35) La cosa legada deberá ser entregada *737 con todos sus accesorios y en el estado en que se halle al morir el testador.(36)
Antes de adentrarnos en la controversia ante nos, es menester puntualizar la relación cronológica de algunos eventos del caso. Primero, el causante Angel Joglar Suárez falleció el 21 de octubre de 1978, habiendo otorgado el tes-tamento ológrafo, en en el que instituyó como herederos a sus cuatro hijos en la legítima forzosa y designó como le-gatarios a tres de sus hijos en inmuebles específicos inclu-yendo el Parking Santa Rita. Segundo, se excluyó al peti-cionario de dicho legado. Tercero, el 12 de diciembre de 1980 el peticionario vendió su participación hereditaria en el caudal del causante Angel Joglar Suárez a sus dos hermanas. Cuarto, el 15 de junio de 1995 los querellantes presentaron contra la Sucesión Angel Joglar Suárez, una reclamación de salarios que comprendían el período de 1985 a 1995,
El causante Angel Joglar Suárez designó como legata-rios a las hermanas y al hermano del peticionario con cargo al tercio de mejora y libre disposición en inmuebles específicos, entre los cuales se encontraba el estableci-miento comercial Parking Santa Rita. El peticionario fue expresamente excluido del legado del cual surge la causa de acción objeto de la reclamación de los querellantes. Por ende, no le fueron transmitidos los derechos ni las obliga-ciones del bien dejado en legado a sus demás hermanos, por lo que no tiene obligación alguna frente a la reclama-ción de salarios de los querellantes.
La reclamación de salarios de los querellantes tampoco constituiría una obligación que heredó el peticionario del causante Angel Joglar Suárez, puesto que ésta se circuns-cribe a diez años con anterioridad a 1995, fecha cuando los querellantes cesan como empleados en el Parking Santa Rita. La reclamación comprende el periodo de 1985 a 1995. El peticionario había vendido antes de 1985 su participa- *738 ción a sus hermanas, liquidándose su participación heredi-taria en la Sucesión Ángel Joglar Suárez el 12 de diciem-bre de 1980. Para 1985, el peticionario no era parte de la Sucesión Ángel Joglar Suárez, pues para esa fecha él ya había vendido su participación en el inmueble Parking Santa Rita.
Durante el periodo de 1985 a 1995, el peticionario nunca administró o se benefició de las operaciones del Parking Santa Rita, ya que éste era administrado por su madre, hermanas y hermano. Desde 1980, el peticionario no era titular del Parking Santa Rita, pues era propiedad de una comunidad de bienes compuesta por la Sra. María Juana Suárez, viuda de Joglar, y de María Margarita, María Eugenia y Ángel, todos de apellido Joglar Suárez.
De lo anterior surge que la causa de acción de los que-rellantes, presentada el 15 de junio de 1995, comprende un periodo posterior a la venta de la participación del peticio-nario en la herencia de su padre (1980) y, en su consecuen-cia, responden a ella únicamente los miembros de la Suce-sión Ángel Joglar Suárez, quienes eran los propietarios y operaron el Parking Santa Rita desde 1985 a 1995. Es for-zoso concluir que las reclamaciones de los querellantes no eran imputables al peticionario, ya que él no fue incluido como legatario en dicho activo y sobre el resto del caudal relicto sólo adquirió derechos y obligaciones durante el pe-ríodo entre el fallecimiento del causante Ángel Joglar Suá-rez (1978) y la venta de su participación en la herencia (1980).
Abona más a nuestra posición el hecho que en el In-forme de Conferencia Preliminar entre Abogados, y en su correspondiente enmienda, las partes estipularon que el peticionario no era miembro de la Sucesión Ángel Joglar Suárez. El Informe de Conferencia Preliminar entre Abo-gados dispone lo siguiente:
II. Las partes coquerelladas estipulan los siguientes hechos que no están en controversia entre ellos:
*739 1. El coquerellado José Antonio Joglar no es miembro de la Sucesión de Angel Joglar Suárez, según surge de la Escritura Núm. 5 otorgada el 12 de diciembre de 1980, ante el Notario Público Ramón Lomba Miranda. Apéndice de la Petición de certiorari, pág. 124.
La Regla 5.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que pueden estipularse entre las partes los he-chos que dan lugar a una controversia de Derecho. Hemos resuelto que las estipulaciones en los hechos obligan tanto a las partes como al juez.(37) Lo que las partes aceptan en el curso procesal de un caso civil —Le., en la contestación a la demanda, la conferencia con antelación al juicio— es incontestable salvo que el tribunal permita enmienda a las estipulaciones.(38) La estipulación es una admisión judicial que implica un desistimiento formal de cualquier conten-ción a ella.(39)
Ahora bien, con relación a la Sucesión de la Sra. María Juana Suárez, viuda de Joglar, la secuencia de los hechos es la siguiente. Primero, el causante Angel Joglar Suárez falleció el 21 de octubre de 1978. Segundo, por tratarse de un bien ganancial, la participación de la Sra. María Juana Suárez, viuda de Joglar, en el Parking Santa Rita era de 50%. Tercero, el 15 de junio de 1995 los querellantes pre-sentaron una querella contra la Sucesión Angel Joglar Suárez, una reclamación de salarios que comprendían el período de 1985 a 1995. Cuarto, el 1 de enero de 1997 falleció la Sra. María Juana Suárez, viuda de Joglar, habiendo manifestado su última voluntad mediante un testa-mento ológrafo, en esencia, idéntico en las cláusulas esenciales a las de su finado esposo.
Al igual que el causante Angel Joglar Suárez, la Sra. *740 María Juana Suárez dejó en legado a las hermanas y her-mano del peticionario, los inmuebles donde ubicaba la ope-ración del Parking Santa Rita. Activos del cual surge la causa de acción objeto del caso. El peticionario fue excluido de este legado. Según esto, es forzoso concluir que las re-clamaciones de los querellantes no eran imputables al pe-ticionario, ya que él no fue designado como legatario de dicho activo en la herencia de su señora madre. No res-ponde frente a la reclamación de salarios de los querellantes.
Resolvemos que el foro intermedio apelativo erró al resolver que la reclamación de la parte querellante fue here-dada por el peticionario.
En tercer lugar examinaremos el planteamiento sobre impedimento colateral por sentencia señalada en el error C.
Alega el peticionario que el Tribunal de Apelaciones de-bió tomar en cuenta la determinación emitida por el Tribu1 nal de Primera Instancia, Sala de San Juan en un litigio anterior (KAC 94-0957) sobre la división de la herencia entre el peticionario y sus hermanas. El peticionario plan-tea que se debió tener en cuenta que aplicaba la doctrina de impedimento colateral por sentencia. No le asiste la razón. Veamos.
El peticionario, sus hermanas y su madre se involucra-ron en un litigio sobre la división de herencia desde 1994. Dicho litigio finalizó con una estipulación entre las partes acordada en una vista celebrada el 19 de marzo de 2002. El peticionario vendió su participación en la herencia de su madre a sus hermanas. Además, se aprobó una reserva de $15,000 —que excluyó al peticionario— para responder a la querella laboral presentada por los querellantes.
Después de varios incidentes procesales, el 26 de enero de 2004 el peticionario presentó ante el Tribunal de Pri-mera Instancia una Réplica a Moción Solicitando el Tribunal no Emita Pronunciamiento por Falta de Juris-dicción *741 (40) Solicitó, entre otras cosas, que se declarara con lugar el pedimento contenido en la Solicitud de Ampliación de Minuta y/o Reconsideración(41) presentada el 10 de diciembre de 2003 o se determinara que no tenía responsa-bilidad en el caso laboral iniciado por los querellantes. En la solicitud de ampliación de minuta se pidió que el Foro de Primera Instancia interpretara la estipulación entre las partes que dio finalidad al litigio de herencia entre ellos. Solicitó, además, que se estableciera cuál era el fin desti-nado de la reserva laboral que formó parte de la estipulación.
El 13 de abril de 2004, el Tribunal de Primera Instancia emitió una Orden en la que indicó lo siguiente:
1. Réplica a Moción Solicitando el Tribunal No Emita .... (Leda. Edmee) Orden. “Como se Pide”.(42) (Énfasis suplido.)
El peticionario entiende que la Orden del Tribunal de Primera Instancia de 13 de abril de 2004 definió su respon-sabilidad en la querella laboral, a base de la sentencia por estipulación, ya final y firme, dictada por acuerdo entre las partes. Sostiene que al acoger la posición consignada en los escritos de 26 de enero de 2004 y 10 de diciembre de 2003, en los cuales se expresaba que mediante la estipulación que surge de la sentencia en dicho caso, la responsabilidad total del pago del litigio laboral le correspondía totalmente a sus hermanos. Alega que erró el foro intermedio apela-tivo al no aplicar la doctrina de impedimento colateral por sentencia, ya que la controversia sobre la responsabilidad del peticionario en el caso laboral se había resuelto en el caso de herencia.
Al revisar el expediente nos percatamos, en efecto, de que el peticionario solicitó en el pleito de herencia que se determinara la responsabilidad de su parte en el pleito *742 laboral. No obstante, no surge concluyentemente que la Orden del Tribunal de Primera Instancia de 13 de abril de 2004 haya adjudicado la responsabilidad, o ausencia de ella, que pueda tener el peticionario ante la reclamación de los querellantes. El “Como se Pide” no es suficiente para acoger la teoría del peticionario de que existe impedimento colateral por sentencia.

 Ocasio v. Kelly Servs., 163 D.P.R. 653 (2005); Lucero v. San Juan Star, 159 D.P.R. 494, 503-504 (2003).

 Ríos v. Industrial Optic, 155 D.P.R. 1, 10 (2001).

 Íd.

 Íd.; Srio. del Trabajo v. J.C. Penney Co., Inc., 119 D.P.R. 660 (1987).

 Ocasio v. Kelly Servs., supra, pág. 666.

 Íd.; Pinero o. A.A.A., 146 D.P.R. 890, 897 (1998).

 Lucero v. San Juan Star, supra, pág. 504.

 Ocasio v. Kelly Servs., supra, pág. 667.

 Íd.

 Íd., pág. 667; Landrum Mills Corp. v. Tribunal Superior, 92 D.P.R. 689, 692 (1965).

 Ocasio v. Kelly Servs., supra, pág. 667.

 Íd.

 Íd.; Valentín v. Housing Promoters, Inc., 146 D.P.R. 712, 716 (1998).

 Berrios v. González et al., 151 D.P.R. 327, 340 (2000).

 Ocasio v. Kelly Servs., supra, pág. 667.

 Íd.

 Íd.

 Rodríguez v. Interactive Syst., Inc., 153 D.P.R. 469, 473 (2001); Dávila, Rivera v. Antilles Shipping, Inc., 147 D.P.R. 483, 496-497 (1999).

 Art. 599 del Código Civil, 31 L.P.R.A. see. 2081.

 Art. 603 del Código Civil, 31 L.P.R.A. see. 2085.

 Art. 608 del Código Civil, 31 L.P.R.A. see. 2090.

 Art. 610 del Código Civil, 31 L.P.R.A. see. 2092.

 Torres v. Registrador, 75 D.P.R. 128 (1953).

 Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 266 (2000).

 Id., págs. 268-269; J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1975, T. V, Vol I., págs. 44-63.

 Id.

 31 L.P.R.A. see. 2782.

 E. González Tejera, Derecho de Sucesiones, San Juan, Ed. U.P.R., 2001, T. 1, pág. 304.

 Íd.

 Gonzalez Tejera, op. cit, T. II, pág. 390.

 Íd., pág. 391.

 J.L. Lacruz Berdejo y F. Sancho Rebullida, Elementos de Derecho Civil: derecho de sucesiones, Barcelona, Ed. Bosch, 1981, T. V, pág. 28.

 Íd.

 Art. 804 del Código Civil, 31 L.P.R.A. see. 2493.

 Art. 807 del Código Civil, 31 L.P.R.A. see. 2496.'

 Art. 805 del Código Civil, 31 L.P.R.A. see. 2494.

 Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 571 (1998).

 Díaz Ayala et al. v. E.L.A., 153 D.P.R. 675, 693 (2001). Véase, además, E.L. Chiesa, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, San Juan, Pubs. JTS, 2000, T. II, pág. 655.

 Íd.

 Apéndice de la Petición de certiorari, págs. 261-264.

 Íd., págs. 265-268.

 Íd., págs. 259-260.