EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Giancarlo González Ascar<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Recurridos | Certiorari<br><br>2025 TSPR 17<br><br>215 DPR \_\_\_ |

Número del Caso: CC-2024-0573


Fecha: 28 de febrero de 2025


Tribunal de Apelaciones:

        Panel VII


Representantes legales de la parte peticionaria:

        Lcdo. Fernando E. Agrait
        Lcdo. José Leonardo Pou Román


Materia: Resolución del Tribunal con Voto particular disidente.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Giancarlo González Ascar<br><br>　　Peticionario<br><br>　　　v.<br><br>Estado Libre Asociado de<br>Puerto Rico y otros<br><br>　　Recurridos | CC-2024-0573 | |

RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de febrero de 2025.

Atendida la *Solicitud de reconsideración* que presentó la parte peticionaria, se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez reconsideraría. El Juez Asociado señor Martínez Torres está conforme y emite las expresiones siguientes a las cuales se unen la Jueza Asociada señora Pabón Charneco, la Jueza Asociada Rivera Pérez y el Juez Asociado señor Candelario López:

> Al igual que la Comisión de Nominaciones sobre las Elecciones del Representante del interés de los Clientes a la Junta de Gobierno de la Autoridad de Energía Eléctrica, yo tampoco dudo del deseo del peticionario González Ascar de servir en bien del pueblo de Puerto Rico. Lo que sucede es que tampoco tengo dudas de que el peticionario González Ascar no tiene la experiencia en asuntos energéticos que la ley exige. Ser experto en computadoras no es lo mismo que ser **perito** en asuntos relacionados con la energía, como exige la ley **vigente**. Es a la Asamblea Legislativa y no a nosotros (ni al Ombudsman) a quien le correspondería eliminar ese requisito de peritaje para ocupar una posición en la Junta.

El Juez Asociado señor Estrella Martínez reconsideraría y emite un Voto particular disidente al cual se unen la

Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Colón Pérez reconsideraría y hace constar las siguientes expresiones:

> Por considerar que el señor Giancarlo González Ascar cumple a cabalidad con todos y cada uno de los requisitos, --incluyendo el de pericia en temas energéticos--, que se requiere para desempeñarse, eficaz y efectivamente, como representante del interés del cliente en la Junta de Gobierno de la Autoridad de Energía Eléctrica, hubiésemos expedido en reconsideración el presente caso para revocar tanto la errónea determinación tomada por el Tribunal de Apelaciones, como la emitida por la Oficina del Procurador del Ciudadano.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Giancarlo González Ascar<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Recurridas | CC-2024-0573 | Certiorari |
|---|---|---|

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, al cual se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y el Juez Asociado Señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 28 de febrero de 2025.

> En resumen, no dudamos de las capacidades del Sr. González Ascar en cuanto a su desempeño, participación e interés de trabajar de manera transparente en bien de Puerto Rico y para los ciudadanos. […].
>
> -Comisión de Nominaciones sobre las Elecciones del Representante del Interés de los Clientes a la Junta de Gobierno de la Autoridad de Energía Eléctrica.[1]

Hoy nos encontramos ante una instancia en la cual la validación de una decisión basada en la norma de deferencia a las interpretaciones administrativas condujo a un resultado

---

[1]Véase, Minuta de la Comisión de Nominaciones sobre las Elecciones del Representante del Interés de los Clientes a la Junta de Gobierno de la Autoridad de Energía Eléctrica, celebrada el 28 de febrero de 2024. Apéndice 12 del recurso del peticionario, pág. 146.

patentemente erróneo. Como veremos a continuación, los hechos específicos de este caso dejan manifiesto que el conocimiento especializado o el manejo de cuestiones técnicas no pueden otorgar a una entidad gubernamental una carta en blanco para actuar de manera irrazonable. Máxime cuando existen insuficiencias normativas tanto en la ley como en el reglamento aplicable.

En este caso, no revisar la decisión administrativa constituye una injusticia, no solo para el Sr. Giancarlo González Ascar (señor González Ascar o peticionario), sino también para los intereses de nuestra ciudadanía en general. El asunto que está en juego es de alto interés público, ya que involucra la fiscalización de un servicio esencial como la energía eléctrica.

En consecuencia, debimos concluir que el peticionario cumple con todos los requisitos necesarios para desempeñarse como representante de los intereses de los clientes en la Junta de Gobierno de la Autoridad de Energía Eléctrica de Puerto Rico. En ese sentido, era nuestra responsabilidad determinar que la Oficina del Procurador del Ciudadano erró al no certificar la candidatura del señor González Ascar para dicho puesto. Me explico.

I.

Como trasfondo al asunto que nos ocupa, en octubre de 2023, la Oficina del Procurador del Ciudadano (Ombudsman) inició el proceso de selección de candidaturas para designar

a la persona que asumiría el cargo de representante de los intereses de los clientes en la Junta de Gobierno de la Autoridad de Energía Eléctrica de Puerto Rico (AEE), de conformidad con la Sección 4 de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, infra. En este proceso, el 14 de diciembre de 2023, el señor González Ascar presentó su candidatura, siendo la única persona en hacerlo.

Al concluir el proceso de evaluación y adjudicación, el 9 de febrero de 2024, el Ombudsman emitió una determinación en la que notificó que no se certificaba la candidatura del señor González Ascar como representante del interés de los clientes de la AEE. En síntesis, señaló que el peticionario no cumplía con el requisito educativo y profesional de contar con diez (10) años de experiencia en ingeniería eléctrica, administración de empresas, economía o finanzas, ni demostró pericia en asuntos de energía, tal como lo exige la Sección 4(a) de la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, infra.[2]

---

[2]La determinación del Ombudsman expresamente dispuso lo siguiente:
  […]
    La Comisión de Nominados, según la ley y el Reglamento que rige el procedimiento, revisó y evaluó los documentos contra los requisitos establecidos por ley, encontrando que lamentablemente usted no cumplió a satisfacción con el requisito de proveer y juramentar el "trasfondo educativo y profesional, de no menos de diez (10) años de experiencia en su campo educativo y profesional, que incluya como mínimo el campo de la ingeniería eléctrica o la administración de empresa, o economía o finanzas". Además, se determinó insuficiente la información para determinar o adjudicarle a su persona "pericia en asuntos de energía", ambos requeridos y esbozados en el tercer párrafo de la sección 194 inciso

Tras recibir una carta del representante legal del peticionario, el 28 de febrero de 2024, el Ombudsman emitió una nueva determinación. En esta, señaló que no se debió notificar que el señor González Ascar no había presentado documentos que acreditaban su trasfondo educativo y profesional de al menos diez (10) años de experiencia en ingeniería eléctrica, administración de empresas, economía o finanzas, ya que estos sí fueron entregados. Sin embargo, aclaró que sí era necesario notificar, como efectivamente se hizo, que la documentación e información suministrada era insuficiente para demostrar pericia en "asuntos de energía". En consecuencia, concluyó que el peticionario posee pericia en plataformas digitales, pero no en asuntos energéticos, por lo que reiteró la decisión de no certificar su candidatura como representante del interés de los clientes de la AEE.

Luego de varios trámites procesales ante el Tribunal de Primera Instancia y el Ombudsman, cuyos detalles no son necesarios detallar, el 12 de abril de 2024, el señor González Ascar presentó una solicitud de <u>Reconsideración</u>

---

(a) de la Ley Núm. 83 del 2 de mayo de 1941, según enmendada (22 L.P.R.A. §194).

Por todo lo anterior, no certificamos su candidatura a la Elección Convocada para Representante de los Intereses de los Clientes en la Junta de Gobierno de la AEE. Agradecemos su interés para representar y defender clientes de la AEE ante su Junta de Gobierno.

Apéndice 9 del recurso del peticionario, pág. 121.

ante el Ombudsman. En su escrito, solicitó la celebración de una vista evidenciaria para, entre otras cosas, presentar el testimonio de varios peritos sobre la interdependencia entre las infraestructuras de informática y energética, así como para demostrar su conocimiento y experiencia en asuntos de energía. No obstante, la oficina no se expresó, por lo que su solicitud fue rechazada de plano.

El 3 de mayo de 2024, el señor González Ascar presentó un Recurso de revisión judicial ante el Tribunal de Apelaciones. En su escrito, enfatizó que la interpretación del término "asuntos de energía" por parte del Ombudsman fue restrictiva y no se ajustó a la política pública energética establecida en la Ley de Transformación y ALIVIO Energético, infra, ni en la Ley de Política Pública Energética, infra. Además, sostuvo que el Ombudsman no tiene autoridad para definir "asuntos de energía", ya que dicho término no está contemplado en su ley orgánica ni en sus reglamentos. Señaló que el Negociado de Energía de Puerto Rico es la entidad con la pericia necesaria en la materia, por lo que le corresponde a este organismo definir el término y recibir deferencia en su interpretación.

El 16 de agosto de 2024, el Tribunal de Apelaciones emitió una Sentencia en la que confirmó la determinación del Ombudsman. En esencia, concluyó que el peticionario no cumplió con el requisito de pericia en asuntos de energía, según lo establecido en la Ley de la Autoridad de Energía

Eléctrica de Puerto Rico, infra, y el Reglamento Núm. 31, infra, del Ombudsman.

El Tribunal de Apelaciones también señaló que, aunque el peticionario ha trabajado con sistemas de información de la AEE y con el manejo de datos sobre averías eléctricas, sistemas financieros y ciberseguridad, esto no le confería pericia en asuntos de energía. Para cumplir con el requisito, "era necesario que demostrara una sabiduría, práctica, experiencia o habilidad directa y concreta con la energía eléctrica".[3] En consecuencia, determinó que el Ombudsman no incurrió en error al denegar la certificación del peticionario como representante del interés del cliente en la Junta de Gobierno de la AEE por incumplir con el requisito de pericia en asuntos de energía.

Inconforme con la decisión del foro apelativo intermedio, el señor González Ascar acude ante nosotros y reitera los argumentos expuestos ante los tribunales inferiores y el Ombudsman. Sin embargo, su recurso fue denegado por una Mayoría de este Tribunal.

En consecuencia, procedo a exponer el marco legal pertinente a la presente controversia, sobre el cual baso mi disenso.

II.

A.

---

[3]Véase, Sentencia del Tribunal de Apelaciones en el caso identificado con el alfanumérico KLRA202400228, pág. 9.

La Oficina del Procurador del Ciudadano fue creada mediante la Ley Núm. 134 de 30 de junio de 1977, conocida como la Ley del Procurador del Ciudadano (Ombudsman), 2 LPRA secc. 701 et seq. (Ley Núm. 134-1977). Así, se introdujo la figura del "Procurador del Ciudadano" con el fin de evitar que la burocratización del sistema administrativo vulnere los derechos de la ciudadanía puertorriqueña. López Nieves v. Méndez Torres, 178 DPR 803, 810-811 (2010). En este contexto, el Ombudsman tiene la responsabilidad de velar por los intereses de la ciudadanía frente a los posibles excesos burocráticos de las entidades gubernamentales. Íd., pág. 811; Exposición de Motivos, Ley Núm. 134-1977, supra.

De otro lado, la Ley Núm. 83 de 2 de mayo de 1941, conocida como la Ley de la Autoridad de Energía Eléctrica de Puerto Rico, 22 LPRA secc. 191 et seq. (Ley Núm. 83-1941), introdujo las figuras de dos (2) representantes del interés del consumidor ante la Junta de Gobierno de la AEE. La selección de estos representantes correspondía inicialmente al Departamento de Asuntos del Consumidor (DACo), hasta la aprobación de la Ley Núm. 207 de 2018, que transfirió al Ombudsman la responsabilidad de reglamentar la elección del representante de los intereses de los clientes ante la Junta de Gobierno de la AEE. Véanse, Secc. 4 de la Ley Núm. 83-1941, supra; Ley Núm. 207 de 2018, supra.

En lo aquí material, la Asamblea Legislativa aprobó la Ley Núm. 222 de 2010 (Ley Núm. 222-2010), con el propósito

de enmendar la Sección 4 de la Ley Núm. 83-1941, supra. Según la Exposición de Motivos de la Ley Núm. 222-2010, supra, esta enmienda surgió para abordar la problemática existente en ese momento, relacionada con la falta de reglamentación por parte del DACo para la elección de los dos (2) representantes de los intereses del consumidor en la Junta de Gobierno de la AEE. Por ello, la referida enmienda estableció que el procedimiento para seleccionar a dichos representantes debía ser más ponderado, serio y certero, de manera tal que candidatos debidamente cualificados pudieran competir en una elección con garantías adecuadas de transparencia y eficacia. Íd.

En consonancia con lo anterior, el inciso (d) de la Sección 4 de la Ley Núm. 83-1941, supra, estableció lo siguiente respecto al reglamento que debía aprobar el DACo y la información que cada aspirante debía presentar como parte de los requisitos para ocupar los cargos de representantes de los intereses del consumidor ante la Junta de Gobierno de la AEE. En particular, se dispuso:

> (d) Elección de los dos (2) representantes del interés del consumidor; procedimiento:
>
> […]
>
> 1. El Departamento de Asuntos del Consumidor, en consulta con el Secretario de la Junta de Gobierno de la Autoridad de Energía Eléctrica, aprobará un reglamento para implementar el procedimiento de elección dispuesto en este inciso (d).
>
> […]

3. El Secretario del DACO diseñará y distribuirá un formulario de Petición de Nominación, en el cual **todo aspirante a ser nominado como candidato hará constar bajo juramento, su nombre, circunstancias personales, dirección física, dirección postal, teléfono, lugar de trabajo, ocupación y número de cuenta con la Autoridad.** En la petición se incluirá la firma de no menos de cincuenta (50) abonados, con su nombre, dirección y número de cuenta con la Autoridad, que endosan la nominación del peticionario.

El Secretario de DACO incluirá en el reglamento un mecanismo de validación de endosos de conformidad a los propósitos de esta Ley. Igualmente en dicho reglamento se incluirán los requisitos de conformidad a las leyes aplicables que deberán tener los candidatos incluyendo Certificación de Radicación de Planillas correspondientes a los últimos cinco (5) años Contributivos y la Certificación Negativa de Deuda emitidas por el Departamento de Hacienda, así como las Certificaciones Negativas de Deudas de la Administración para el Sustento de Menores (ASUME) y el Centro de Recaudación de Impuestos Municipales (CRIM) y cualquier otro documento requerido por ley.
[…] (Negrillas suplidas). Ley Núm. 222-2010, supra.

Posteriormente, la Ley Núm. 29 de 2013 (Ley Núm. 29-2013), enmendó nuevamente la Sección 4 de la Ley Núm. 83-1941, supra. Esta enmienda conllevó una reestructuración y reorganización del cuerpo rector de la AEE. Para explicar esta modificación, la Exposición de Motivos estableció lo siguiente:

**Ante la falta de especificaciones necesarias en la ley sobre las cualificaciones, la preparación, experiencia y representatividad de sus miembros, el esquema actual propicia que la configuración de la Junta de Gobierno de la Autoridad de Energía Eléctrica resulte aleatoria e incierta y, por ende, no tenga una composición representativa, balanceada y capacitada para atender efectivamente los retos**

**que enfrenta esta entidad gubernamental en su administración y ofrecimiento de servicios al País.** En aras de lograr que los objetivos de política pública se alcancen de la forma más efectiva y responsiva al bienestar de la ciudadanía, es necesario que esta Asamblea Legislativa ejerza su prerrogativa constitucional y reorganice el cuerpo rector de la Autoridad de Energía Eléctrica. (Negrillas suplidas). Exposición de Motivos, Ley Núm. 29-2013, supra.

Como resultado de lo anterior, se modificó la cantidad de representantes de los intereses del consumidor, aumentándolo de dos (2) a tres (3) miembros. En particular, dos (2) de estos miembros representarían los intereses de los consumidores residenciales, mientras que el tercero representaría los intereses de los consumidores comerciales o industriales. En cuanto a los requisitos para estos tres (3) miembros, la Ley Núm. 29-2013, supra, añadió uno adicional: acreditar su preparación académica.[4] Por lo demás, mantuvo los restantes requisitos inalterados, según lo establecido en la Ley Núm. 22-2010, supra. **Nótese que, aunque la Asamblea Legislativa fundamentó en la Exposición de Motivos de la Ley Núm. 29-2013, supra, que la Ley Núm. 83-1941, supra, carecía de especificaciones sobre las**

---

[4]En concreto, el inciso (c), en su sub-inciso (3), quedó de la siguiente forma:

El Secretario del DACO diseñará y distribuirá un formulario de Petición de Nominación, en el cual todo aspirante a ser nominado como candidato hará constar bajo juramento, su nombre, circunstancias personales, dirección física, dirección postal, teléfono, lugar de trabajo, ocupación, **preparación académica** y número de cuenta con la Autoridad. […] (Negrillas suplidas). Ley Núm. 29-2013, supra.

**cualificaciones, preparación y experiencia de sus miembros, no estableció ningún requisito relacionado con la pericia en asuntos de energía.**

En este contexto, el DACo desarrolló el <u>Reglamento para la elección mediante referéndum de los representantes del interés de los consumidores residenciales y comerciales o industriales a la Junta de Gobierno de la Autoridad de Energía Eléctrica de Puerto Rico; y normas de procedimiento para la elección y destitución</u>, aprobado el 4 de febrero de 2014, también conocido como Reglamento Núm. 8448 (Reglamento 8448) (Derogado). Concretamente, la Regla 6 de dicho cuerpo reglamentario estableció que:

> A. **Los candidatos deberán ser defensores de los intereses de los consumidores residenciales y comerciales o industriales**; y cumplir con los siguientes requisitos:
>
> 1. Deberán ser mayores de edad.
> 2. Saber leer y escribir.
> 3. Residir legalmente en el Estado Libre Asociado de Puerto Rico.
> 4. Deberá ser abonado bona fide o cliente bona fide del servicio de energía que presta la Autoridad.
> 5. **Poseer la actitud y aptitud para ejercer las funciones de sus cargos.**
> 6. Deberá estar en pleno disfrute de sus derechos civiles.
> 7. No haber sido destituido de alguna posición gubernamental o haber sido encontrado responsable administrativamente de una violación de la Ley de Ética Gubernamental.
> 8. Aceptar los mismos derechos y responsabilidades que los otros miembros que componen la Junta de Gobierno.
> 9. No será miembro de otra Junta de Directores de Agencia, Autoridad, Corporación Pública o Instrumentalidad del Gobierno de los Estados Unidos de América, del Estado Libre Asociado

de Puerto Rico o de los Gobiernos Municipales.

10. No ser empleado, empleado jubilado o tenga interés económico sustancial, directo o indirecto, en alguna empresa privada con la cual la Autoridad otorgue contratos o haga transacciones de cualquier índole.

11. No haber tenido, en los dos (2) años anteriores a su cargo, una relación o interés comercial en alguna empresa privada con la cual la Autoridad otorgue contratos o haga transacciones de cualquier índole.

12. No haber sido miembro de un organismo directivo a nivel central o local de un partido político inscrito en el Estado Libre Asociado de Puerto Rico durante el año previo a la fecha de su designación.

13. No ser empleado, miembro, asesor o contratista de los sindicatos de trabajadores de la Autoridad.

14. Proveer las siguientes certificaciones:
   a. Certificado de radicación de planillas correspondientes a los últimos cinco (5) años contributivos,
   b. Certificación negativa de deuda emitida por el Departamento de Hacienda,
   c. Certificación negativa de deuda con la Autoridad,
   d. Certificado de Antecedentes Penales de la Policía de Puerto Rico,
   e. Certificación negativa de deuda de la Administración para el Sustento de Menores (ASUME),
   f. Certificación negativa de deuda del Centro de Recaudaciones de Impuestos Municipales (CRIM).

15. Cualquier otro documento requerido por ley.

16. Los interesados en representar a los consumidores comerciales o industriales debe[n] presentar evidencia que los identifique como comerciantes bona fide.

17. Deberá cumplimentar el "Formulario de Petición de Nominación" según la Regla (8) inciso (3).

(Negrillas suplidas). Reglamento Núm. 8448, supra.

Con el paso de los años, mediante la enmienda introducida por la Ley Núm. 4 de 2016 (Ley Núm. 4-2016), se

redujo de tres (3) a dos (2) el número de representantes de los intereses del consumidor. Específicamente, uno (1) de estos miembros representaría los intereses de los clientes residenciales, mientras que el otro atendería los intereses de los clientes comerciales o industriales. Además, la Ley Núm. 4-2016 incorporó dos (2) requisitos adicionales para ocupar estos cargos: (1) <u>acreditar experiencias de trabajo relevantes para los puestos en cuestión</u> y (2) <u>cumplir, una vez electos, con las Reglas Finales de Gobierno Corporativo de la Bolsa de Valores de Nueva York.</u>[5] Por lo demás, mantuvo sin cambios los restantes requisitos, según lo establecido en la Ley Núm. 29-2013, supra. **Es importante destacar que la Ley Núm. 4-2016, supra, tampoco introdujo en la Ley Núm. 81-1941, supra, algún requisito relacionado con la pericia en asuntos de energía.**

Una vez más, la Sección 4 de la Ley Núm. 81-1941, supra, experimentó enmiendas con la aprobación de la Ley Núm. 37 de

---

[5]En concreto, el inciso (c), en su sub-inciso (3), quedó de la siguiente forma:

El Secretario del DACO diseñará y distribuirá un formulario de Petición de Nominación, en el cual todo aspirante a ser nominado como candidato hará constar bajo juramento su nombre, circunstancias personales, dirección física, dirección postal, teléfono, lugar de trabajo, ocupación, **experiencias de trabajo previas que sean relevantes**, preparación académica y número de cuenta con la Autoridad. **El formulario además dispondrá que, una vez electos, los candidatos someterán información suficiente que acredite su cumplimiento con las Reglas Finales de Gobierno Corporativo de la Bolsa de Valores de Nueva York.** […] (Negrillas suplidas). Ley Núm. 4-2016, supra.

2017 (Ley Núm. 37-2017), a los fines de reorganizar nuevamente la Junta de Gobierno de la AEE. Como consecuencia, el número de representantes de los intereses del consumidor se redujo de dos (2) a uno (1), quedando un único representante para los clientes residenciales, comerciales e industriales. En este contexto, se introdujo por primera vez el requisito de contar con al menos diez (10) años de experiencia en el campo de la ingeniería eléctrica, administración de empresas, economía o finanzas, además de poseer pericia en "asuntos de energía" para ocupar el puesto. Sin embargo, no se definió el término asuntos energéticos. Así, el inciso (a) de la Sección 4 dispuso lo siguiente:

> […] El candidato a representante de los clientes, entre otros requisitos, deberá contar con un **trasfondo educativo y profesional, de no menos de diez (10) años de experiencia en su campo profesional. Los criterios de trasfondo educativo y profesional deberán incluir, como mínimo, el campo de la ingeniería eléctrica, la administración de empresas, o economía y finanzas.** Además, éste **deberá tener pericia en asuntos de energía.** […]. (Negrillas suplidas). Ley Núm. 37-2017, supra.

Conviene mencionar que, actualmente, los requisitos para ocupar este cargo se mantienen inalterados, con la excepción de que se añadió el campo de la **ingeniería mecánica** como parte del trasfondo educativo que puede tener el candidato al puesto en cuestión.[6]

---

[6]Así, el inciso (a) de la Sección 4 de la Ley 83-1941, supra, dispone que:

> […] El candidato representante de los clientes, entre otros requisitos, deberá contar con un

Con el tiempo, la Asamblea Legislativa aprobó la Ley Núm. 207 de 2018 (Ley Núm. 207-2018), con el objetivo de enmendar una vez más la Sección 4 de la Ley Núm. 83-1941, supra. En esencia, esta enmienda transfirió del DACo al Ombudsman la responsabilidad de reglamentar la elección del representante de los intereses de los clientes ante la Junta de Gobierno de la AEE. Por ello, el Ombudsman creó el Reglamento para la elección mediante referéndum del representante de interés de clientes a la Junta de Gobierno de la Autoridad de Energía Eléctrica de Puerto Rico, y normas de procedimiento para la elección y destitución, aprobado el 1 de noviembre de 2023, conocido también como Reglamento Núm. 31 (Reglamento 31).

De acuerdo con las disposiciones del reglamento antes citado, este debe interpretarse de manera liberal y con el objetivo de cumplir con los mandatos de la Ley Núm. 134-1977, supra, así como con los principales objetivos de esta actividad. Sección 1.3 del Reglamento 31, supra. **Estos incluyen promover una amplia participación de los clientes y seleccionar a las personas más capacitadas y dispuestas a**

---

trasfondo educativo y profesional, de no menos de diez (10) años de experiencia en su campo profesional. Los criterios de trasfondo educativo y profesional deberán incluir, como mínimo, el campo de la ingeniería eléctrica **o mecánica**, la administración de empresas, o economía y finanzas. Además, este deberá tener pericia en asuntos de energía y no podrá ser empleado público, excepto de ser profesor del Sistema de la Universidad de Puerto Rico. […] (Negrillas suplidas). Sección 4(a), Ley Núm. 83-1941, supra.

**servir en beneficio de los intereses de los clientes en la Junta de Gobierno de la AEE**. Íd.

Cabe señalar que, como parte de los requisitos del puesto del representante de los intereses del consumidor a la Junta de Gobierno de la AEE, el Reglamento 31 incorporó lo establecido por la Ley Núm. 83-1941, supra. Específicamente, dicho reglamento enumeró los criterios de la forma siguiente:

> **Los candidatos deberán ser defensores de los intereses de los clientes y cumplir con los siguientes requisitos:**
>
> 1. Poseer la actitud y aptitud para ejercer las funciones de su cargo, **incluyendo pericia en asuntos de energía;**
>
> 2. Contar con un trasfondo educativo y profesional, de no menos de diez (10) años de experiencia en su campo educativo y profesional que incluya como mínimo el campo de la ingeniería eléctrica o la administración de empresa, o economía o finanzas; […] (Negrillas suplidas) Reglamento 31, Secc. 3.2, pág. 5, supra.

**Sin embargo, es importante destacar que ni el reglamento mencionado ni la Ley Núm. 83-1941, supra, junto con sus respectivas enmiendas, proporcionan una definición sobre lo que implica poseer pericia en "asuntos de energía".**

B.

Como parte de las numerosas enmiendas a la Ley Núm. 83-1941, la Asamblea Legislativa aprobó la Ley Núm. 271 de 2018 (Ley Núm. 271-2018)[7], cuya Exposición de Motivos señala lo

---

[7]En esencia, esta ley fue aprobada a los fines de aclarar que los procesos iniciados para elegir al representante del

siguiente sobre la figura del representante de los intereses de los clientes ante la Junta de Gobierno de la AEE:

> **[L]a participación activa de la figura del representante del cliente en la toma de decisiones es fundamental para garantizar que se tomen en cuenta las voces de nuestros ciudadanos. Lo anterior dará legitimación necesaria, así como la confianza de nuestro pueblo, asegurándonos así que la transformación energética redundará en beneficio de todos los puertorriqueños.** (Negrillas suplidas).

En concordancia con lo anterior y con el propósito de asegurar que se escuchen las voces de la ciudadanía puertorriqueña, la Ley Núm. 83-1941, supra, faculta al representante a llevar a cabo reuniones públicas adicionales a la reunión obligatoria que la Junta debe celebrar una vez al año, según lo dispuesto en la Sección 4(b) de la Ley Núm. 83-1941, supra. Como parte de sus funciones en la Junta, estas reuniones le permiten atender preguntas y preocupaciones de los clientes y del público en general sobre los servicios de la AEE. Su coordinación deberá hacerse en conjunto con el Presidente de la Junta. Íd.

Desde otra perspectiva, es importante señalar que **las voces de la ciudadanía puertorriqueña juegan un papel esencial incluso antes de la elección del representante de**

---

interés de los clientes, iniciados por el DACo, previo a la aprobación de la Ley Núm. 271-2018, supra, continuarían su trámite bajo la jurisdicción de DACo, hasta la elección del representante del interés de los clientes. Una vez concluido el proceso en curso, quedaría transferida la responsabilidad al Ombudsman.

**los intereses de los consumidores ante la Junta de la AEE**. Esto se debe a que, en la actualidad, el aspirante a este cargo debe presentar, como parte de su solicitud, un mínimo de treinta (30) endosos de abonados residenciales, diez (10) endosos de abonados comerciales y diez (10) endosos de abonados industriales. Además, debe incluir una carta firmada por un (1) oficial de cada abonado comercial o industrial, que certifique el endoso del candidato por parte de dicho abonado. Sección (c), sub-inciso (3) de la Ley Núm. 83-1941, supra.

C.

Es un principio fundamental de hermenéutica legal que, cuando la ley es clara y libre de toda ambigüedad, su letra debe respetarse sin alteraciones bajo el pretexto de cumplir con su espíritu. <u>Martajeva v. Ferre Morris</u>, 210 DPR 612, 625 (2022). Por el contrario, cuando una disposición legal o un estatuto es ambiguo o posee lagunas, los tribunales debemos interpretarlos más allá de su texto. <u>Romero Lugo v. Cruz Soto</u>, 205 DPR 972, 992-93 (2020); <u>Alonso García v. S.L.G.</u>, 155 DPR 91, 99 (2001).

En este proceso pueden prevalecer principios de interpretación como el de *las leyes in pari materia*, el cual establece que las normas que regulan un mismo asunto o persiguen un mismo propósito deben analizarse en conjunto, remitiéndose unas a otras, de modo que cualquier ambigüedad en una ley pueda aclararse con las disposiciones de otra.

Véase, Art. 21 del Código Civil de Puerto Rico, 31 LPRA secc. 5343. De forma similar, las distintas secciones de un estatuto deben analizarse en su conjunto, evitando una interpretación aislada o fragmentada. Romero Lugo v. Cruz Soto, supra; Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 939-940 (2010). En otras palabras, las leyes deben considerarse como un todo para comprender el significado de cada una de sus partes. Asoc. Fcias. v. Caribe Specialty et al. II, supra, pág. 939.

Asimismo, resulta fundamental considerar la intención del legislador al promulgar el estatuto. Pueblo v. De Jesús, 70 DPR 37, 42 (1949). Esto se debe a que, en el ejercicio de interpretación legal, los tribunales tenemos el deber de **"armonizar, en la medida posible, todas las disposiciones de ley involucradas en aras de obtener un resultado más sensato, lógico y razonable"**. Sucn. Álvarez v. Srio, de Justicia, 150 DPR 252, 274 (2000).

Por último, **las leyes deben interpretarse "en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver"**. (Negrillas suplidas). Pueblo v. Zayas Rodríguez, 147 DPR 530, 537 (1999), citando a Col. Ing. Agrim. P.R. v. A.A.A., 131 DPR 735, 756 (1992). De manera similar, el Código Civil de Puerto Rico establece que **"para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a**

**los objetivos del legislador, a la causa o el motivo para dictarla**". (Negrillas suplidas). Véase, Art. 20 del Código Civil de Puerto Rico, 31 LPRA secc. 5342.

D.

Es norma reiterada que las determinaciones de las agencias administrativas, debido a su conocimiento especializado en las materias que les han sido delegadas por ley, gozan de una presunción de corrección y regularidad. Por ello, los foros judiciales deben otorgar deferencia a los dictámenes emitidos por las agencias con respecto a las leyes y los reglamentos que administran, y no descartar libremente sus conclusiones e interpretaciones. OCS v. Point Guard Ins., 205 DPR 1005, 1026 (2020); Asoc. Fcias. v. Caribe Specialty et al. II, supra, pág. 940; JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 186 (2009).

A tales efectos, la función determinante de la revisión judicial es garantizar que las agencias administrativas actúen dentro del poder que se les delegó y en armonía con la política legislativa. Por consiguiente, la revisión judicial de las decisiones administrativas debe circunscribirse a examinar si la actuación de la agencia fue arbitraria, ilegal o irrazonable. OCS v. Point Guard Ins., supra, pág. 1026; Asoc. Fcias. v. Caribe Specialty et al. II, supra, pág. 941; Calderón Otero v. C.F.S.E., 181 DPR 386, 396 (2011); JP, Plaza Santa Isabel v. Cordero Badillo, supra, pág. 187.

En ese sentido, si en el ejercicio de su función revisora los tribunales determinan que el foro administrativo quebrantó directamente garantías constitucionales fundamentales o procedió de manera arbitraria o caprichosa, de ordinario, los foros judiciales pueden intervenir y sustituir el criterio de la agencia por el suyo. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 DPR 521, 533 (1993). Lo anterior, debido a que el conocimiento especializado o el manejo de cuestiones técnicas no proveen una carta en blanco para que la agencia actúe *ultra vires*, caprichosa, arbitraria o irrazonablemente. Comisionado v. Prime Life, 162 DPR 334, 341 (2004); OEG v. Román, 159 DPR 401, 417(2003); OCS v. Triple-S, 191 DPR 536, 556 (2014) (Op. disidente del Juez Asociado señor Estrella Martínez).

E.

Conforme a esa realidad jurídica, el Profesor Jorge Farinacci Fernós señala que existe una norma de deferencia hacia las interpretaciones de las agencias administrativas cuando se cumplen tres (3) condiciones específicas: (1) el texto estatutario o reglamentario presenta ambigüedades comunicativas; (2) la norma en cuestión es administrada por la agencia; y (3) la interpretación propuesta es razonable. Esto se debe a que, debido a su conocimiento especializado, la agencia está en mejor posición para determinar la opción más adecuada entre las alternativas que permite la ambigüedad. J. M. Farinacci Fernós, Hermenéutica

puertorriqueña: Cánones de interpretación jurídica, 1ra ed., San Juan, Ed. Universidad Interamericana de Puerto Rico, 2019, pág. 249.

Sin embargo, el Profesor Jorge Farinacci Fernós especifica que **cuando existen insuficiencias comunicativas o normativas, la construcción de la agencia tendrá un peso significativo, pero no será determinante. En estos casos, los tribunales poseen el poder de rechazar su interpretación si concluyen que otra es más correcta**. Íd., pág. 250.

### III.

Al examinar el trámite legislativo de las múltiples enmiendas en la Ley Núm. 83-1941, supra, relacionadas con la figura del representante de los intereses del consumidor ante la Junta de Gobierno de la AEE, resulta forzoso concluir que existe una insuficiencia normativa respecto al concepto "pericia en asuntos de energía", lo que genera ambigüedades en su interpretación. Ante este panorama, este Tribunal tiene la facultad de limitar la deferencia a la interpretación del Ombudsman sobre dicho término, máxime cuando su reglamentación no define expresamente tal concepto. Como señala el profesor Farinacci Fernós, en situaciones donde existen insuficiencias comunicativas o normativas, la interpretación de la agencia puede tener un peso significativo, pero no resulta determinante, lo que permite a los tribunales rechazar dicha interpretación si consideran que otra resulta más adecuada. J.M. Farinacci Fernós, supra,

pág. 250. **A mi entender, es en este tipo de situaciones donde la función judicial cobra especial relevancia, pues corresponde a los tribunales garantizar que la interpretación de la norma se ajuste a los principios y objetivos de la legislación vigente.**

Como vimos, las leyes y los reglamentos aplicables a la controversia que nos ocupa disponen que los candidatos al puesto en cuestión deben actuar como defensores de los intereses de los consumidores y que su participación en la toma de decisiones es fundamental para garantizar que las voces de la ciudadanía sean debidamente consideradas. Véanse, Reglamento 31, supra; Exposición de Motivos, Ley Núm. 15-2018, supra; Reglamento 8448, supra (Derogado); Sección 4(b) de la Ley Núm. 83-1941, supra. Asimismo, estas disposiciones establecen que los principales objetivos del representante del consumidor incluyen promover una participación amplia de los clientes y seleccionar a las personas mejor capacitadas y comprometidas con la defensa de sus intereses en la Junta de Gobierno de la AEE. Reglamento 31, Sección 1.3.

De hecho, también vimos que la participación de los clientes comienza incluso antes de la elección del representante de los consumidores ante la Junta de la AEE. Lo anterior, debido a que el aspirante a este cargo debe presentar, como parte de su solicitud, al menos treinta (30) endosos de abonados residenciales, diez (10) de abonados

comerciales y diez (10) de abonados industriales. Véase, Sección (c), sub-inciso (3) de la Ley Núm. 83-1941, supra. **Esta exigencia establece un mecanismo de participación activa y validación pública que asegura que el candidato cuente con el respaldo de la comunidad que representará, permitiendo evaluar no solo sus méritos, sino también su compromiso con los clientes. Así, se garantiza que la ciudadanía tenga una voz importante en la selección de quien ocupará este cargo.**

De acuerdo con lo expuesto, sostener la conclusión del Ombudsman, realizada en un vacío normativo, respecto al término "pericia en asuntos de energía", la cual es a todas luces irrazonable, desvirtuaría el propósito para el cual fue creado el puesto de representante del consumidor. Cabe recordar que **las leyes deben interpretarse "en comunión con el propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver".** (Negrillas suplidas). <u>Pueblo v. Zayas Rodríguez</u>, supra, pág. 537, citando a <u>Col. Ing. Agrim. P.R. v. A.A.A.</u>, supra, pág. 756. Similarmente, **"para descubrir el verdadero sentido de una ley cuando sus expresiones son ambiguas, se considerará su razón y su espíritu, mediante la atención a los objetivos del legislador, a la causa o el motivo para dictarla".** (Negrillas suplidas). Art. 20 del Código Civil de Puerto Rico, 31 LPRA secc. 5342.

Según la interpretación del Ombudsman, contar con pericia en asuntos de energía implica poseer conocimiento especializado en algunos de los más de veintitrés (23) tipos de energía, lo que, en su interpretación, se traduce a dominar disciplinas como la química o la física.[8] **Sin embargo, esta exigencia resulta irrazonable si se considera la naturaleza del cargo, cuyo propósito principal no es la operación de maquinarias sofisticadas ni la aplicación de conocimientos técnicos sobre energía en el terreno, sino la fiscalización y la defensa de la representatividad e intereses del consumidor en las agencias que prestan servicios energéticos a la ciudadanía. Esta interpretación errónea constituye una razón adicional para que este Tribunal interviniera y sustituyera el criterio de la agencia.** En efecto, es norma establecida que cuando una agencia actúa de manera irrazonable, sus determinaciones no deben prevalecer.

---

[8]Véase, Minuta de la Comisión de Nominaciones sobre las Elecciones del Representante del Interés de los Clientes a la Junta de Gobierno de la Autoridad de Energía Eléctrica, celebrada el 28 de febrero de 2024. Apéndice 12 del recurso del peticionario, págs. 139-140. En concreto, el Comité de Nominaciones señaló lo siguiente:

> Si bien la experiencia plasmada en documentos sometidos evualuados por este Comité esteblece sabiduria y experiencia en asuntos de digitalización para agencias del gobierno de Puerto Rico, no evidencian pericia en ninguno de los más de 23 tipos de energía: Energía eléctrica, lumínica, mecánica, térmica, eólica, solar, nuclear, cinética, potencial, química, hidráulica, sonora, radiante, fotovoltaica, de reacción, iónica, geométrica, mareomotriz, electromagnética, metabólica, hidroeléctrica, magnética y calorífica.

<u>OCS v. Point Guard Ins.</u>, supra, pág. 1026; <u>Asoc. Fcias. v. Caribe Specialty et al. II</u>, supra, pág. 941; <u>Calderón Otero v. C.F.S.E.</u>, supra, pág. 396. De lo contrario, claudicaríamos nuestra función constitucional como máximos intérpretes de las leyes.

En la misma línea, el Tribunal de Apelaciones concluyó que, para cumplir con el requisito de pericia en asuntos de energía, el aspirante debía demostrar "una sabiduría, práctica, experiencia o habilidad directa y concreta con la energía eléctrica".[9] No obstante, esta exigencia de un alto grado de especialización desvirtúa el propósito del representante del consumidor, cuya función no es la de un experto técnico en energía, sino la de velar por los derechos e intereses de los clientes y garantizar su participación efectiva en los procesos de toma de decisiones.

Nuestra interpretación, basada en la evidencia contenida en el expediente administrativo, es que el peticionario cumple con los requisitos establecidos. De hecho, durante sus reuniones, el Comité de Nominaciones expresó que no tenía dudas sobre las capacidades del señor González Ascar, resaltando su desempeño, participación e interés en trabajar de manera transparente por el bien de Puerto Rico.[10] En este contexto, la exigencia impuesta por

---

[9]Véase, <u>Sentencia</u> del Tribunal de Apelaciones en el caso identificado con el alfanumérico KLRA202400228, pág. 9.

[10]Específicamente, la Comisión de Nominaciones expresó lo siguiente: [e]n resumen, no dudamos de las capacidades

el Ombudsman, posteriormente confirmada por el Tribunal de Apelaciones, resulta irrazonable, pues establece un estándar contrario al propósito del puesto y restringe indebidamente la participación ciudadana en la Junta de Gobierno de la AEE.

Además, según consta en el expediente, el peticionario tiene experiencia en asuntos energéticos.[11] En particular, el peticionario posee experiencia en la gestión de los sistemas de información de la AEE, incluyendo el manejo de datos sobre averías eléctricas, información geoespacial, sistemas financieros y ciberseguridad.[12] También desarrolló

---

del Sr. González Ascar en cuanto a su desempeño, participación e interés de trabajar de manera transparente en bien de Puerto Rico y para los ciudadanos. […]. Véase, Minuta de la Comisión de Nominaciones sobre las Elecciones del Representante del Interés de los Clientes a la Junta de Gobierno de la Autoridad de Energía Eléctrica, celebrada el 28 de febrero de 2024. Apéndice 12 del recurso del peticionario, pág. 146."

[11] Véase, Apéndices 3, 6 y 7 del recurso del peticionario, 39-67, 84-118.

[12] En relación con este asunto, el señor González Ascar sostiene que intentó presentar el testimonio de la Lcda. Mayra Vicil Bernier para incluir en el récord cómo, en un caso de una de sus representadas legales contra LUMA, se utilizó una aplicación desarrollada por él y su equipo para demostrar la ocurrencia de un apagón. Según el peticionario, esto llevó a que LUMA admitiera la existencia del apagón, previamente negado, y que presuntamente causó el daño reclamado. Además, señala que el testimonio de la Lcda. Vicil Bernier tenía como propósito demostrar su conocimiento y experiencia en asuntos energéticos.

Es importante resaltar que las protecciones mínimas del debido proceso de ley incluyen el derecho a ser oído, Román Ortiz v. OGPe, 203 DPR 947, 954 (2020). Asimismo, el Art. 16 de la Ley Núm. 134-1977, supra, establece que antes de emitir una opinión final que "afecte a una agencia o persona, el

una aplicación para reportar averías en el sistema eléctrico; participó en una brigada tras el paso del huracán María, donde colaboró en el desarrollo de una herramienta para registrar el progreso de los trabajos; y publicó un libro sobre la digitalización de los sistemas en Puerto Rico, en el que incluyó a la AEE.

A la luz de lo discutido, es evidente que denegar la expedición del recurso y permitir que subsista la decisión del Ombudsman de descalificar al peticionario para ser certificado como candidato a representante de los intereses de los consumidores en la Junta de Directores de la AEE representa una injusticia para la parte peticionaria y los intereses de nuestra ciudadanía en general. Los asuntos que están en juego son de alto interés público, especialmente cuando se trata de la fiscalización de servicios esenciales como la energía eléctrica.

**Al sostenerse la determinación del Ombudsman, se produce la paradójica e irrazonable consecuencia de que al representante del Pueblo se le están exigiendo mayores**

Ombudsman deberá dar a éstas una oportunidad razonable para expresar sus puntos de vista sobre el asunto". En mi opinión, para garantizar las protecciones mínimas del debido proceso de ley y cumplir con el Art. 16 de la Ley Núm. 134-1977, supra, el Ombudsman debió permitir la celebración de la vista.

Cabe destacar que, dado que no existe controversia sobre que el peticionario fue el único candidato en someter su candidatura, no parecería una dilación irrazonable que se le concediera una oportunidad adecuada para obtener una vista evidenciaria y presentar prueba adicional sobre el requisito en controversia.

credenciales que al Presidente de LUMA e, incluso, que al propio Director de la Autoridad de Energía Eléctrica. Por lo tanto, me veo obligado a fundamentar y hacer constar que hubiera expedido el recurso ante nuestra consideración y revocado la decisión del Ombudsman. Por ello no ocurrir de esta forma, respetuosamente disiento.


                              Luis F. Estrella Martínez
                                   Juez Asociado